**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**BROOKLYN DIVISION**

| | | |
|---|---|---|
| VERMEER MANUFACTURING COMPANY | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No.  1:25-cv-239 |
| AEROCINE VENTURES INC. | ) ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) ) ) | |

## COMPLAINT

Plaintiff Vermeer Manufacturing Company ("Vermeer") for its Complaint against Defendant AeroCine Ventures Inc. ("AeroCine"), alleges as follows:

## NATURE OF THE ACTION

1.     This case arises from AeroCine's willful infringement of Vermeer's valuable trademark rights.

2.     For nearly eighty years, Vermeer has invested significant resources in developing and maintaining the substantial goodwill that now accompanies its business name. Vermeer has consistently remained at the forefront of the industrial and agricultural markets by inventing novel products to meet the needs of the industries it serves. As a result of that innovation, customers have come to exclusively associate the mark VERMEER and related logos with Vermeer's high-quality goods and services.

3.     Despite AeroCine's awareness of Vermeer's trademark rights, AeroCine adopted an identical mark and substantially similar logo to offer and sell software for use with drones—a

product increasingly used in the industrial and agricultural markets that Vermeer serves.

4.     AeroCine's willful infringement has and will continue to harm Vermeer by causing confusion among consumers regarding the source of AeroCine's goods and services.

## PARTIES

5.     Plaintiff Vermeer Manufacturing Company is an Iowa corporation with a principal place of business at 1210 Vermeer Road East, Pella, IA 50219. For most of a century, Vermeer has designed, manufactured, and sold a variety of industrial and agricultural equipment around the world, including in the United States, under the mark VERMEER and related logos.

6.     Defendant AeroCine Ventures, Inc. is a Delaware corporation having an address at 253 36th Street 316B, Brooklyn, New York, 11232. On information and belief, AeroCine uses the mark VERMEER to offer and sell drone software in a variety of industries. Using its infringing VERMEER mark and a stylized "V" logo, AeroCine promotes its software online and at trade shows.

## JURISDICTION AND VENUE

7.     This is an action for trademark infringement and unfair competition under the Trademark Act of 1946, 15 U.S.C. §§ 1051, et seq., as amended (the "Lanham Act"); and for unfair competition under the laws of the State of New York.

8.     This Court has subject-matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1332(a), and 1338(a) and (b), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

9.     This Court has personal jurisdiction over Defendant AeroCine because AeroCine conducts business in this District and has committed acts of infringement in this District, including by manufacturing, selling, and/or offering for sale infringement products in this District.

10.     Venue is proper in this District under 28 U.S.C. § 1391 because AeroCine has maintained a physical, regular, and established place of business in this District and is thus subject to personal jurisdiction in this judicial district, and because events giving rise to the claims alleged herein occurred in this District.

## **FACTS**

11.     This is an action to recover damages resulting from AeroCine's willful infringement of Vermeer's valuable trademark rights and to prevent further injury caused by AeroCine's unfair competition.

### *Vermeer and its VERMEER Marks*

12.     Vermeer is the owner of registered and common law trademark rights in the mark and trade name VERMEER.  Vermeer adopted and commenced use of its VERMEER mark at least as early as 1948 in connection with agricultural equipment and has continued to use the VERMEER mark to expand into a variety of industries.

13.     Vermeer uses the mark VERMEER as a house mark, which serves as a source identifier for all goods and services it offers. To accompany and support use of its house mark, Vermeer has also developed design marks—*i.e.*, logos—consisting of a stylized letter "V" with or without other design elements.

14.     Vermeer's federal registrations for the VERMEER mark and stylized V logo include the following (collectively, the "VERMEER Marks"):

| Mark | Registration |
|:---:|:---:|
| VERMEER | 2,593,606 |
| VERMEER | 1,771,115 |

3



| | |
|---|---|
| | 3,346,180 |
| | 7,295,357 |
| | 4,752,754 |

True and correct copies of the foregoing registrations, retrieved from the Trademark Status and Document Retrieval database on the U.S. Patent & Trademark Office website, are attached as Exhibit A.

15.     Under U.S. Trademark Registration Nos. 2,593,606 and 1,771,115, Vermeer owns the mark VERMEER in standard characters, meaning Vermeer is entitled to protection of the mark in any font style, size, or color, including a stylization that uses the font style used by a junior user or subsequent applicant for registration.

16.     Most of Vermeer's registrations for the VERMEER Marks are incontestable.  Thus, under Sections 15 and 33(b) of the Lanham Act (15 U.S.C. §§ 1065, 1115(b)), Reg. Nos. 2,593,606, 1,771,115, 3,346,180, and 4,752,754 serve as conclusive evidence of Vermeer's exclusive right to use the stylized V logo and the mark VERMEER in commerce in connection with the foregoing products and services.

17.     U.S. Trademark Reg. No. 7,295,357 is a valid and subsisting registration on the Principal Register, and therefore serves as prima facie evidence of Vermeer's exclusive right to use the stylized V logo depicted therein.

18.     Since at least 1948, Vermeer has continuously used the mark VERMEER in commerce throughout the United States in connection with the advertising, sale, and promotion of various industrial and agricultural products, including machinery, equipment, and related goods and services.

19.     Since at least 2006, Vermeer has continuously used the stylized V Logo to enhance and reinforce Vermeer's use of the VERMEER Mark.

20.     For example, Vermeer uses a combination of VERMEER Marks on its website, social media, and directly on products to identify Vermeer as the source of the branded goods and services:



(https://www.vermeer.com)



(https://www.linkedin.com/company/vermeer-corporation/)

21.     Through decades of investment, promotion, development, and careful stewardship, the VERMEER Marks have become an extremely valuable and well-known representation of the

goodwill associated with the goods and services offered and sold by Vermeer.

22.    Moreover, the VERMEER Marks are inherently distinctive, because they do not describe or suggest the products and services that are offered under those marks.

23.    The VERMEER Marks have been used for decades, are the subject of federal registrations, are the result of hundreds of millions of dollars in advertising investment, drive billions of dollars in product and service sales every year, and are of lasting value in the market. For at least these reasons, the VERMEER Marks are also famous.

***Vermeer's Reputation for Innovation Under the VERMEER Marks***

24.    Since its inception, Vermeer has invented cutting-age machines and equipment in a variety of industries, which are still in use today.

25.    In the 1950s, for example, Vermeer invented the stump grinder, a powerful machine still in use in the field of commercial tree care.

26.    A decade later, Vermeer invented the utility trencher, a type of plow that allows the user to efficiently dig trenches in a variety of ground surfaces.

27.    In the 1970s, Vermeer solidified its stature as a household name by inventing the round hay baler, a machine that revolutionized the agricultural industry's approach to gathering and storing hay.

28.    Since the 1990s, Vermeer has been a market leader in underground utility installation thanks to its complete line of proprietary horizontal directional drills.

29.    More recently, Vermeer has developed multiple kinds of software to increase job efficiency. For example, Vermeer's installation planning software allows online tracking of machine productivity and remote jobsite management. Vermeer also offers simulation software to allow industry professionals to practice their skills or train new employees.

30.     As a result of these decades of innovation, consumers associate Vermeer with cutting-edge products that are not limited to a single industry and which may not yet be offered by its direct competitors.

***AeroCine and the Infringing Marks***

31.     AeroCine is the registered owner of U.S. Trademark Reg. No. 5,927,317 for the mark VERMEER in standard characters for use in connection with "software for augmented reality drone navigation" (the "'317 Registration"). A true and correct copy of the TSDR pages for the '317 Registration are attached as Exhibit B.

32.      AeroCine originally filed its application for the '317 Registration in February 2018 as an intent-to-use application under Section 1(b) of the Lanham Act, 15 U.S.C. § 1051(b).

33.     According to Internet Archive records reflecting previous iterations of AeroCine's website, AeroCine's initial use of the VERMEER mark was limited to development of a tool "designed to improve the experience of flying a camera and increase a pilot's control over the picture or video that the drone is capturing."

34.     In August 2018, AeroCine began "searching for DJI drone pilots of all skill levels to participate in [a] closed beta test of the product."



ABOUT VERMEER

We're building the first augmented reality camera flight tool.

Vermeer is designed to improve the experience of flying a camera and increase a pilot's control over the picture or video that the drone is capturing. The software is being developed by the Aerobo team, aerial cinematography experts who discovered unnecessary friction in executing the perfect shot. Their goal is to enable anyone to execute and share complex aerials for creative, personal, or professional purposes.

The Vermeer team is now searching for DJI drone pilots of all skill levels to participate in our closed beta test of the product. Selected participants will receive free access to the product 3-6 months before release in return for honest feedback on their experience.

**DJI Drone Pilots can sign up for exclusive beta access below.**

(https://web.archive.org/web/20180823220405/http://www.getvermeer.com/)
(red emphasis added)

35.    On information and belief, "DJI drone pilots" as used on AeroCine's website referred to operators of unmanned aerial vehicles created by the company DJI. DJI manufactures and sells, among other things, drones for use in agriculture. *See* https://ag.dji.com/.

36.    In September 2019, AeroCine filed specimens of use with the USPTO indicating that the mark was in use in connection with a cell phone application:



(https://tsdr.uspto.gov/documentviewer?caseId=sn87792159&docId=SPE20190920164047&link Id=6#docIndex=5&page=1 (red emphasis added)).

37.    In the years since filing those specimens, AeroCine's use of its infringing VERMEER mark has evolved. On information and belief, AeroCine has partnered with drone manufacturers to integrate AeroCine's "Visual Positioning System" software into unmanned aerial vehicles.

38.    AeroCine has also begun expanding its use beyond drones by marketing its VPS software for use with other technology, such as a cell phone.

39.    As AeroCine's product offering has changed, so too has its use of the mark. In contrast to the mark depicted in its September 2019 statement of use, AeroCine now uses the mark VERMEER in a rounded, sans serif font that is almost always in close proximity to a stylized "V" logo:



(https://www.getvermeer.com/)



(https://www.linkedin.com/company/vermeerapp/)

40.    Although these examples show a registered symbol next to the stylized V logo, Vermeer is not aware of a federal trademark registration owned by AeroCine in connection with a "V" design mark.

41.    AeroCine uses this evolved VERMEER mark and stylized V logo to markets its software online and at trade shows across the country.

42.    For example, AeroCine operated a booth at the 2023 Army Aviation Mission Solutions Summit in Nashville, Tennessee as "Vermeer."



(https://www.linkedin.com/posts/christopher-pickett-1a652160_come-check-us-out-for-denied-gps-and-augmented-activity-7057105319721672704-qH2J/)



(https://s7.goeshow.com/aaaa/missionsolutions/2023/exh_list.cfm)



(https://s7.goeshow.com/aaaa/missionsolutions/2023/profile.cfm?profile_name=exhibitor&maste
r_key=2A291256-DA11-ED11-80FD-E8BA6E675572&inv_mast_key=E77D9D5D-90B1-
1C06-DFD2-FCA29413A908&xtemplate)

***AeroCine's Wrongful Conduct is Causing Actual Confusion Among Consumers***

43.    As a result of AeroCine's conduct, customer confusion has already begun. For example, as recently as May 2024, Vermeer received a letter from the Air & Space Forces Association regarding AeroCine's registration for an upcoming trade show under the name "Vermeer."

44.    Despite the fact that AeroCine registered for the trade show using its own business address and contact information, the Air & Space Forces Association contacted Vermeer—rather than AeroCine—to discuss the Association's difficulty collecting payments owed under its contract with AeroCine. This type of negative consumer experience has and continues to tarnish Vermeer's business reputation and dilutes the goodwill it has spent decades building in its

VERMEER Marks.

45.    Without further discovery, Vermeer cannot currently ascertain the extent of the actual confusion caused by AeroCine's intentional infringement. As represented by the Air & Space Forces Association's confusion, however, it is likely that consumers who have or will enter into business relationships with AeroCine have done so under the impression that they are contracting with Vermeer and that they will receive Vermeer's high-quality goods and services.

46.    AeroCine's infringing use of the mark VERMEER has and will continue to confuse or deceive consumers into believing that Vermeer is the source of AeroCine's goods and/or services or that AeroCine is otherwise affiliated or associated with Vermeer.

47.    AeroCine's infringing use of a stylized V logo has and will continue to confuse or deceive consumers into believing that Vermeer is the source of AeroCine's goods and/or services or that AeroCine is otherwise affiliated or associated with Vermeer.

***AeroCine's Infringement is Willful***

48.    AeroCine designed and adopted its infringing VERMEER mark and stylized V logo with full awareness of Vermeer's VERMEER mark and V logo.

49.    AeroCine has been aware of Vermeer's VERMEER mark and stylized V logo since at least as early as 2018, when AeroCine submitted Google search results to the Trademark Examiner for the term "Vermeer." The search results prominently displayed the Vermeer stylized V logo and contained multiple links to Vermeer websites containing the VERMEER Marks, at least one of which had been visited prior to the document's submission.

50.    Sometime after submitting those search results to the Examiner, AeroCine dramatically changed the design of its VERMEER mark and "V" logo. Specifically, AeroCine adopted a bold, rounded sans-serif font in upper- and lower-case lettering for the word VERMEER,

in contrast to the light, angular, upper-case font it used previously. Vermeer also substantially changed the appearance of its stylized "V" logo, which now bears little to no resemblance to its original "V" logo:

| AeroCine's Use in Commerce (2018-2019) | AeroCine's Use in Commerce (Present) |
|---|---|
|  | |

51.     By making these changes, AeroCine ensured that confusion between its infringing VERMEER mark and Vermeer's legitimate VERMEER Marks was all but certain:

| AeroCine's Use in Commerce | Vermeer's Use in Commerce |
|---|---|
|  | |

52.     AeroCine has acknowledged that the parties' marks are identical and has recognized that it would need—but has never received—Vermeer's permission to use the mark VERMEER in commerce. In July 2022, for example, AeroCine's CEO contacted Vermeer's Intellectual Property Counsel regarding the parties' identical marks. Through that message, AeroCine notified Vermeer of AeroCine's infringing use of the mark VERMEER and asked to "see if there was a way to amicably resolve" any issues arising from the parties' identical marks.

53.     Three weeks later, despite its acknowledgment of Vermeer's valid and subsisting senior trademark rights, AeroCine sent *Vermeer* a letter demanding that it immediately cease using the mark VERMEER.

54.     Shortly after receiving that letter, on August 16, 2022, Vermeer filed a petition to cancel the '317 Registration in a proceeding before the Trademark Trial and Appeal Board, which the Board instituted as Cancellation No. 92080355.

55.     Through the petition to cancel, Vermeer explained in detail the bases for finding a likelihood of confusion between the parties' VERMEER registrations, including the identical appearance of the marks in standard characters, and the significant relatedness of the goods and services offered under the marks.

56.     For example, Vermeer's petition noted that drones are increasingly used in agriculture to monitor the status of crops, acquire data about the environment, distribute pesticides, and protect crops from wildlife, as evidenced by multiple federal trademark registrations covering drones for use in agriculture.

57.     In its answer to Vermeer's petition to cancel, AeroCine admitted that the VERMEER mark depicted in its registration is identical to Vermeer's VERMEER Mark.

58.     Despite this awareness of Vermeer's marks and the likelihood of confusion caused by AeroCine's infringement, AeroCine has willfully continued using its infringing VERMEER marks and stylized V logo to this day.

***Injury to Vermeer and the Public***

59.     AeroCine's unlawful activity causes an immediate threat of irreparable harm and injury to Vermeer. By creating a likelihood of confusion among consumers, AeroCine is depriving Vermeer of control over its own business reputation and goodwill.

60.     AeroCine's willful infringement includes deliberate, bad faith use of Vermeer's exact VERMEER word mark and substantially similar stylized marks. Consumer confusion from such use is inevitable.

61.    AeroCine's actions deprive Vermeer of its absolute right to determine the manner in which its goods and services are presented to the general public.

62.    The production, sale and promotion of software and machinery across the United States is an enormous undertaking. Managing the goodwill of the VERMEER Marks under such circumstances requires a high degree of skill and professionalism. This is particularly true given the safety and privacy concerns that inherently accompany the use of location positioning software.

63.    AeroCine's willful infringing conduct, including the sale of potentially damaged or faulty software or products, exposes Vermeer to the risk of losing the significant goodwill and reputation associated with its business and trademarks.

64.    AeroCine's actions also harm the consuming public because consumers are and will be deceived as to the origin or sponsorship of AeroCine's products and services. In particular, purchasers of AeroCine's software or related drones will wrongly believe those products and services are affiliated with, or approved by, Vermeer.

65.    Vermeer is entitled to injunctive relief restraining AeroCine, its officers, agents, servants, employees, and attorneys, and all persons acting in concert with it, from engaging in any further acts in violation of Vermeer's rights.

66.    Vermeer is further entitled to recover from AeroCine the damages, including treble damages, interest, and attorney fees and costs it has sustained and will continue to sustain, as well as any gains, profits and advantages obtained by AeroCine, also trebled, that resulted from AeroCine's wrongful and infringing acts.

67.    Vermeer is also entitled to a finding that AeroCine's actions constitute unclean hands in light of AeroCine's intentional redesign of its infringing VERMEER mark to adopt a nearly identical font and substantially similar stylized V logo, rendering the parties' marks nearly

indistinguishable. AeroCine committed this deliberate infringement with full knowledge and awareness that it lacked any right, license, or authorization by Vermeer to use the legitimate VERMEER Marks in any manner.

### COUNT I – FEDERAL TRADEMARK INFRINGEMENT
### (LANHAM ACT, 15 USC § 1114)

68.     Vermeer re-alleges and incorporates by reference the other paragraphs of this Complaint as if fully set forth herein.

69.     Vermeer owns all rights in U.S. Registered Trademark Nos. 2,593,606 and 1,771,115 for the mark VERMEER in standard characters.

70.     These marks are incontestable, inherently distinctive and have acquired distinctiveness in the minds of the public for nearly eighty years as identifiers for Vermeer's high-quality products and services.

71.     Despite actual and constructive knowledge of Vermeer's federal registrations, AeroCine applied for registration of the mark VERMEER and began using the mark VERMEER, together with other design elements, to offer and sell goods and/or services in interstate commerce.

72.     AeroCine's infringing uses of the mark VERMEER to advertise and sell drone software and/or related goods and services has created and will continue to create a likelihood of confusion, deception, or mistake on the part of the consuming public regarding AeroCine's affiliation with Vermeer in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

73.     Over time, AeroCine's use of its registered VERMEER mark has grown and evolved, causing consumer confusion to become even more likely.

74.     AeroCine's infringing uses of the mark VERMEER were committed willfully, intentionally and with knowledge that such use would cause confusion, cause mistake, and/or deceive the consuming public.

75.    AeroCine has been unjustly enriched and Vermeer has been injured and damaged in an amount to be determined at trial.

76.    Unless the foregoing acts of AeroCine are enjoined, Vermeer will continue to suffer irreparable damage for which Vermeer has no adequate remedy at law.

77.    Because of AeroCine's unlawful actions, Vermeer is entitled to injunctive relief, an accounting of profits, damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1114, 1116, and 1117. Vermeer is further entitled to have its profits award enhanced and its damages award trebled as authorized by 15 U.S.C. § 1117.

78.    As a result of the likelihood of confusion caused by AeroCine's registered mark, this Court should cancel U.S. Trademark Reg. No. 5,927,317 pursuant to 15 U.S.C. § 1064.

## COUNT II – FEDERAL TRADEMARK INFRINGEMENT
### (LANHAM ACT, 15 U.S.C. § 1114)

79.    Vermeer re-alleges and incorporates by reference the other paragraphs of this Complaint as if fully set forth herein.

80.    Vermeer owns all rights in U.S. Trademark Reg. Nos. 3,346,180, 7,295,357, and 4,752,754 for various iterations of Vermeer's stylized "V" design mark.

81.    Each of these marks are inherently distinctive and have acquired distinctiveness in the minds of the public over nearly a century as identifiers for Vermeer's high-quality products and services.

82.    Additionally, Reg. Nos. 3,346,180 and 4,752,754 are incontestable.

83.    AeroCine's infringing uses of a stylized V logo online and in advertising to sell drone software and/or related goods and services constitutes use in interstate commerce.

84.    AeroCine's infringing uses of a stylized V logo to advertise and sell drone software and/or related goods and services have created and will continue to create a likelihood of

confusion, deception, or mistake on the part of the consuming public regarding AeroCine's affiliation with Vermeer in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

85.    AeroCine's infringing uses of a stylized V logo were committed willfully, intentionally and with knowledge that such use would cause confusion, cause mistake, and/or deceive the consuming public.

86.    AeroCine's misuse of the registered symbol in connection with its unregistered stylized V logo further constitutes unclean hands and evidence of AeroCine's intention to deceive the public regarding its mark.

87.    AeroCine has been unjustly enriched and Vermeer has been injured and damaged in an amount to be determined at trial.

88.    Unless the foregoing acts of AeroCine are enjoined, Vermeer will continue to suffer irreparable damage for which Vermeer has no adequate remedy at law.

89.    Because of AeroCine's unlawful actions, Vermeer is entitled to injunctive relief, an accounting of profits, damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1114, 1116, and 1117. Vermeer is further entitled to have its profits award enhanced and its damages award trebled as authorized by 15 U.S.C. § 1117.

## COUNT III – FEDERAL UNFAIR COMPETITION
### (LANHAM ACT, 15 U.S.C § 1125(a))

90.    Vermeer re-alleges and incorporates by reference the other paragraphs of this Complaint as if fully set forth herein.

91.    Vermeer owns all rights in the VERMEER Marks as used in commerce, including the following stylized forms:

 

92.    The stylized VERMEER Marks are distinctive and valuable source identifiers of Vermeer's products and services.

93.    AeroCine's uses of a stylized VERMEER mark and/or V logo in connection with non-Vermeer goods and services are likely to cause confusion, or to cause mistake, or to deceive customers and members of the public as to the affiliation, connection, or association between AeroCine and Vermeer, or as to the origin, sponsorship, authorization or approval of AeroCine's goods and/or services by Vermeer.

94.    Vermeer has not authorized AeroCine's uses of confusingly similar marks with non-Vermeer goods and/or services.

95.    Upon information and belief, AeroCine's actions have been undertaken with an intentional, willful, or malicious intent to trade upon the goodwill of Vermeer's marks, with reckless disregard for Vermeer's rights, with bad faith, and with intent to injure Vermeer and deceive the public.

96.    AeroCine's deceptive acts have injured Vermeer in an amount to be determined at trial.

97.    Unless the foregoing actions are enjoined, Vermeer will continue to suffer irreparable damage, for which it has no adequate remedy at law.

98.    Because of AeroCine's unlawful actions, Vermeer is entitled to injunctive relief, an accounting of profits, damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1114, 1116, and 1117. Vermeer is further entitled to have its profits award enhanced and its

damages award trebled as authorized by 15 U.S.C. § 1117.

## COUNT IV – NEW YORK UNFAIR COMPETITION
### (NEW YORK GENERAL BUSINESS LAW § 360-L)

99.    Vermeer re-alleges and incorporates by reference the other paragraphs of this Complaint as if fully set forth herein.

100.    Plaintiff seeks recovery from Defendant for violation of New York General Business Law 360-l.

101.    By virtue of Defendants' unauthorized use of Plaintiff's Federal Registered Trademarks, such use trading on the goodwill associates with Plaintiff, Defendant has misled and will continue to mislead the public into assuming a connection between Plaintiff's and Defendant's products.

102.    By falsely suggesting a connection with or sponsorship by Plaintiff, Defendant is likely to cause public confusion constituting unfair competition within the meaning of New York Business Law 360-l.

103.    If such action on the part of Defendant continues, Plaintiff will suffer irreparable harm of a continuing nature, for which there is no adequate remedy at law.

104.    Plaintiffs have no adequate remedy at law and are suffering irreparable harm and damage as a result of the aforementioned acts of Defendant in an amount thus far not determined.

105.    Upon information and belief, Defendant has obtained gains, profits, and advantages as a result of its wrongful acts in an amount thus far not determined.

## COUNT V – COMMON LAW TRADEMARK INFRINGEMENT

106.    Vermeer re-alleges and incorporates by reference the other paragraphs of this Complaint as if fully set forth herein.

107.     Defendant's acts previously alleged herein constitute common law trademark infringement.

108.     Plaintiff is without adequate remedy at law, as Defendant's acts have caused Plaintiff irreparable harm to its business reputation, goodwill, and stature in the business community.

109.     Plaintiff is informed and believes, and herein alleges, that Defendant committed the above acts oppressively, fraudulently, maliciously, and in conscious disregard of Plaintiff's rights, and Plaintiff is therefore entitled to exemplary and punitive damages pursuant to the common law of the State of New York in an amount sufficient to punish, deter, and make an example of Defendant.

110.     The manufacture, distribution, and sale of the unauthorized and infringing products by Defendant are without any permission, license, or other authorization from Plaintiff.  The said unauthorized products are being distributed and sold in interstate commerce.

111.     Plaintiff has no adequate remedy at law and are suffering irreparable harm and damage as a result of the aforementioned acts of Defendant in any amount thus far not determined.

112.     Upon information and belief, Defendant has obtained gains, profits, and advantages as a result of its wrongful acts in an amount thus far not determined.

## COUNT VI – COMMON LAW UNFAIR COMPETITION

113.     Vermeer re-alleges and incorporates by reference the other paragraphs of this Complaint as if fully set forth herein.

114.     Defendant's acts previously alleged herein constitute common law trademark infringement.

115.     Plaintiff is without adequate remedy at law, as Defendant's acts have caused

Plaintiff irreparable harm to its business reputation, goodwill, and stature in the business community.

116.    Plaintiff is informed and believes, and herein alleges, that Defendant committed the above acts oppressively, fraudulently, maliciously, and in conscious disregard of Plaintiff's rights, and Plaintiff is therefore entitled to exemplary and punitive damages pursuant to the common law of the State of New York in an amount sufficient to punish, deter, and make an example of Defendant.

117.    The manufacture, distribution, and sale of the unauthorized and infringing products by Defendant are without any permission, license, or other authorization from Plaintiff. The said unauthorized products are being distributed and sold in interstate commerce.

118.    Plaintiff has no adequate remedy at law and are suffering irreparable harm and damage as a result of the aforementioned acts of Defendant in any amount thus far not determined.

119.    Upon information and belief, Defendant has obtained gains, profits, and advantages as a result of its wrongful acts in an amount thus far not determined.

## **PRAYER FOR RELIEF**

WHEREFORE, Vermeer prays that this Court enter judgment in its favor and against AeroCine as follows:

A.    An order cancelling U.S. Trademark Registration No. 5,927,317 pursuant to 15 U.S.C. §§ 1064 and 1119;

B.    An order directing AeroCine to expressly abandon or surrender with prejudice any and all of its applications or registrations fo the mark VERMEER or any mark consisting of, incorporating, or containing Vermeer's VERMEER Marks or any counterfeit, copy, confusingly similar variation, or colorable imitation thereof on any state or federal

trademark register;

C.   A preliminary and permanent injunction that enjoins and restrains AeroCine, its agents, servants, employees, attorneys, partners, licensees, divisions, affiliates, parent corporation(s), and all others in active concert or participation with any of them:

    i.   From using, in connection with the promotion, advertising, offering, or sale of its unlicensed or unauthorized products and services, the VERMEER Marks or any other designation that is confusingly similar to the aforementioned marks, that is likely to cause confusion with the aforementioned marks, or dilution or is likely to dilute the aforementioned marks;

    ii.   From registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the mark VERMEER or any other mark that infringes or is likely to be confused with Vermeer's VERMEER Marks, or any goods or services of Vermeer, or Vermeer as their source;

    iii.   From otherwise competing unfairly with Vermeer in any manner including (1) adopting or infringing upon the VERMEER Marks, or (2) adopting or using any other marks or designations that are confusingly similar to the aforementioned marks; and

    iv.   From conspiring with, aiding, assisting, or abetting any other person or business entity in engaging in or performing any of the activities referred to above.

D.   An order requiring AeroCine to file with this Court and to serve upon Vermeer a report in writing and under oath setting forth in detail the manner and form in which AeroCine has complied with any permanent injunction resulting from this matter within thirty days

after entry of that permanent injunction;

E.    An order finding that AeroCine's conduct has violated 15 U.S.C. §§ 1114 and 1125, New York General Business Law § 360-l, and New York common law;

F.    An order awarding monetary damages sufficient to compensate Vermeer for the injuries suffered as a result of AeroCine's wrongful conduct in an amount that is fair and reasonable;

G.    An award of actual damages and AeroCine's profits and unjust enrichment realized from its infringement and other wrongful conduct;

H.    An order finding this case exceptional and that AeroCine's wrongful conduct has been willful, and awarding treble damages and attorneys' fees to Vermeer pursuant to 15 U.S.C. § 1117;

I.    An award of punitive and exemplary damages as the Court finds appropriate to deter any future willful infringement;

J.    An award of Vermeer's pre- and post-judgment interest, costs, and reasonable attorney's fees expended in this action; and

K.    An award of such other and further relief as the Court deems just and proper.


Dated:  January 14, 2025                          Respectfully submitted,


                                                  By: */s/ Andrew T. Lolli*
                                                  Andrew T. Lolli
                                                  7 Times Square, 44th Floor
                                                  New York, NY 10036
                                                  (212) 209-4400
                                                  alolli@atllp.com

Richard L. Brophy (*pro hac vice* forthcoming)
Melanie E. King (*pro hac vice* forthcoming)
ARMSTRONG TEASDALE LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
(314) 621–5070
rbrophy@atllp.com
meking@atllp.com

*Attorneys for Plaintiff Vermeer Manufacturing Company*