

Richard L. Brophy

Direct  **T** 314.342.4159   **F** 314.613.8579

rbrophy@atllp.com

March 14, 2025

**VIA CM/ECF**
Hon. LeShann DeArcy Hall
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *Vermeer Mfg. Co. v. AeroCine Ventures Inc.*, Case No. 1:25-cv-239-LDH-TAM
       Plaintiff's Opposition to Defendant's Letter of Intent to File Motion to Dismiss

Dear Judge DeArcy Hall,

    Plaintiff Vermeer Manufacturing Company ("Vermeer") opposes Defendant AeroCine Ventures Inc.'s ("AeroCine") letter of intent to file a motion to dismiss. AeroCine has already caused consumer confusion through its use of a mark identical to Vermeer's and has *admitted* to that confusion by serving Vermeer with a cease-and-desist letter, despite being the junior user. In that same letter, AeroCine specifically admitted that the parties' goods were so similar "as to deceive customers or to cause confusion or mistake as to the origin or affiliation of Vermeer Corporation's and AeroCine's goods and services," but now preposterously asserts the opposite. AeroCine's request to file a motion to dismiss should be denied.

**Relevant Background**

    This is a classic case of willful trademark infringement. Vermeer operates a global business offering innovative machinery and related products—including software—under its valuable VERMEER trademarks, which are protected through multiple federal registrations and common law. Compl. ¶¶ 2, 14–23, ECF No. 1. In 2018, AeroCine filed a trademark application for the infringing mark VERMEER based on its use of the mark with a drone-navigation app. *Id.* ¶¶ 31–36. AeroCine's business has since grown from a fledgling app to a line of GPS-positioning software products. *See id.* ¶¶ 37–39.

    AeroCine has been well aware of Vermeer's senior rights in the VERMEER mark since at least 2018, when it inadvertently submitted evidence of that knowledge to the USPTO. *Id.* ¶ 49. AeroCine subsequently made drastic changes to its stylized VERMEER mark and V logo to appear all but identical to Vermeer's marks (*id.* ¶¶ 50–51):

| AeroCine's Mark | Vermeer's Senior Mark |
|---|---|
|  | |

    Apparently realizing its significant exposure to an infringement claim, AeroCine's CEO sent Vermeer an unsolicited message in July 2022 to "see if there was a way to amicably resolve" any issues arising from the parties' identical marks. *Id.* ¶ 52. To be clear:  there was no existing

March 14, 2025
Page 2

dispute at the time of AeroCine's unsolicited message because Vermeer had not yet learned of AeroCine's unauthorized use of its marks. Nonetheless, three weeks later, AeroCine's trademark counsel sent *Vermeer* a letter demanding that it immediately cease using its VERMEER marks and cancel its existing software-related registrations and applications due to a likelihood of confusion with AeroCine's registration—thereby admitting to its infringement as the junior user. *Id.* ¶ 63. Vermeer swiftly filed an administrative proceeding to cancel AeroCine's trademark registration, but AeroCine has continued its willful infringement, leading to actual confusion concerning the source, sponsorship, or affiliation of AeroCine's goods. *Id.* ¶¶ 43–47. To ward against further confusion, Vermeer filed this action.

## Synopsis of Arguments

### I. Vermeer Has Stated its Claims for Trademark Infringement

To state a claim of trademark infringement or unfair competition, a plaintiff must plausibly allege that the defendant's use of a similar mark is likely to cause consumer confusion in light of the Second Circuit's eight *Polaroid* factors. *Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*, 823 F.3d 153, 160 (2d Cir. 2016). "The application of the *Polaroid* test is not mechanical, but rather, focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused." *Id*. Due to its fact-intensive nature, motions to dismiss based on a purported failure to satisfy the *Polaroid* test are disfavored. *See Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402 (S.D.N.Y. 2006). Even so, Vermeer has adequately pled facts demonstrating that the *Polaroid* factors overwhelmingly weigh in its favor.

**Strength of Plaintiff's Marks**: AeroCine does not dispute the validity or strength of Vermeer's asserted marks, which are arbitrary and benefit from significant commercial investment and success. *See* Compl. ¶¶ 22–23. This factor therefore favors Vermeer. *Googly Eye Cru, LLC v. Fast Retailing USA, LLC*, 1:24-cv-3709, 2025 WL 692125, at *4 (S.D.N.Y. Mar. 4, 2025).

**Similarity of Competing Marks**: The parties' marks are identical in their standard-character forms and nearly identical in stylized form. *See* Compl. ¶ 52. AeroCine does not—and cannot—dispute that this factor weighs heavily in favor of Vermeer. *See id.* ¶ 57.

**Competitive Proximity of Products**: AeroCine contends that parties' goods are dissimilar, but that is not true: both parties offer software for controlling machinery. Compl. ¶¶ 6, 31. More importantly, AeroCine **already admitted that the parties' goods are confusingly similar** when it sent Vermeer a cease-and-desist letter **specifically citing the parties' overlapping goods**. It is shocking that AeroCine is now trying to argue the exact opposite.

Regardless, "direct competition between the products is not a prerequisite to relief." *A&E Television Networks, LLC v. Big Fish Ent., LLC*, No. 1:22-cv-7411, 2023 WL 4053871, at *18 (S.D.N.Y. June 16, 2023) (cleaned up). AeroCine's hyperfocus on the text of Vermeer's trademark registrations is also misplaced, since Counts III and V of the Complaint arise from Vermeer's common-law trademark rights, which protect a broader array of goods than its registrations. In any event, this fact-intensive argument cannot support a motion to dismiss.

**Bridging the Gap**: AeroCine misconstrues this factor, arguing that Vermeer must demonstrate consumers are actually aware of "plans by Vermeer to enter the augmented reality drone navigation software market." ECF No. 11, at 3. <u>This is not the law</u>. Vermeer must only plead that "consumers will *perceive* [Vermeer] as *likely*" to bridge the gap between the parties' goods,

March 14, 2025
Page 3

if indeed one exists. *Googly Eye Cru*, 2025 WL 692125, at *5 (quotations omitted). Courts routinely find this factor satisfied where, even without "present intention to bridge the gap, consumers will assume otherwise and conclude, in this era of corporate diversification, that the parties are related companies." *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 338 (S.D.N.Y. 2010). Vermeer exceeds this pleading requirement by showing that (1) companies like Vermeer have already bridged any purported gap by offering drones or software for drones, and (2) even if they had not, Vermeer is known for offering cutting-edge products before its direct competitors. *See* Compl. ¶¶ 24–30, 56. This factor further favors Vermeer.

**Actual Confusion**: Vermeer has submitted evidence of actual confusion in the form of a third-party letter complaining that AeroCine had failed to pay its vendor fees for an upcoming trade show, clearly under the mistaken impression that the parties were one and the same. Compl. ¶¶ 43–44. This evidence again exceeds Vermeer's burden at this stage since actual confusion is not necessary to prove infringement. *N.Y.C. Triathlon*, 704 F. Supp. 2d at 318. AeroCine attempts to downplay this fatal fact as "administrative confusion," pointedly ignoring that the letter's sender is a trade association exemplifying AeroCine's core consumer base. *See, e.g.*, *Midcap Business Credit, LLC v. Midcap Financial Trust*, 2024 WL 3606244, at *2 (S.D.N.Y. July 31, 2024) (finding "substantial actual confusion" where plaintiff was "congratulated by industry members on an award given to defendants"). This factor weighs heavily in Vermeer's favor.

**Defendant's Bad Faith**: AeroCine does not dispute that it has been aware of Vermeer's marks since at least 2018 or it has since drastically altered the design of its VERMEER mark and V logo to closely resemble Vermeer's. Compl. ¶¶ 49–50. This factor favors Vermeer.

**Quality of Defendant's Products or Services**: The same letter that exhibits actual confusion further demonstrates "Defendant's apparent shoddy business practices and poor customer service [that will] necessarily jeopardize Plaintiff's longstanding reputation." *N.Y.C. Triathlon*, 704 F. Supp. 2d at 320. This factor also weighs in Vermeer's favor.

**Sophistication of Buyers**: Relying exclusively on attorney argument, AeroCine contends that the parties' consumers are "highly sophisticated purchasers," so confusion is supposedly unlikely. ECF No. 11, at 2. It is telling that the only case AeroCine cites for this argument resulted from a bench trial (*Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373 (2d Cir. 2005))—this is not an appropriate basis for a Rule 12(b)(6) motion.

## II. Vermeer is Unquestionably the Senior User

AeroCine preposterously asserts that Vermeer is the junior user here because some of its registrations issued after AeroCine's. ECF No. 11 at 2. It is well-settled, however, that trademark seniority arises from <u>use in commerce</u>, not registration. *See* 4 McCarthy on Trademarks and Unfair Competition § 26:53 (5th ed.). Vermeer has been using its VERMEER marks in commerce for decades and is inarguably the senior user here. *See* Compl. ¶¶ 2, 12, 19.

## III. Vermeer Does Not Assert a Dilution Claim

AeroCine puzzlingly contends that Vermeer has failed to state "a viable claim for trademark dilution," but none of Vermeer's five claims arise under 15 U.S.C. § 1125(c) or otherwise require a showing of dilution. Any motion to dismiss on this basis should be denied.

March 14, 2025
Page 4

Respectfully,

Richard L. Brophy