

**Richard L. Brophy**
Direct  **T** 314.342.4159   **F** 314.613.8579
rbrophy@atllp.com

August 21, 2025

**VIA CM/ECF**
Hon. LeShann DeArcy Hall
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> **Re:**   *Vermeer Mfg. Co. v. AeroCine Ventures Inc.*, Case No. 1:25-cv-239-LDH-TAM
> Plaintiff's Opposition to Defendant's Supplemental Letter of Intent to Move to Dismiss

Dear Judge DeArcy Hall,

Plaintiff Vermeer Manufacturing Company ("Vermeer") opposes Defendant AeroCine Ventures Inc.'s ("AeroCine") supplemental letter of intent to move to dismiss (ECF No. 19). AeroCine's letter is based entirely on its own unfounded factual assertions regarding consumer perceptions and the nuances of the parties' goods. Those allegations, however, do not appear in Vermeer's First Amended Complaint and cannot support a motion under Federal Rule of Civil Procedure 12(b)(6). Attorney argument is not a substitute for discovery. AeroCine has failed to identify a valid basis on which to dismiss Vermeer's claims at this stage.

### I.   AeroCine Disregards the Notice Pleading Standard

To ultimately succeed on its claims, Vermeer will need to prove that AeroCine's infringing VERMEER mark is likely to cause consumer confusion under the Second Circuit's eight non-exclusive *Polaroid* factors. *Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*, 823 F.3d 153, 161 (2d Cir. 2016). At the pleading stage, however, the standard is much lower: "the Court only inquires as to whether Plaintiff has plausibly alleged *some* of the relevant factors, not whether the balance of factors weighs in favor of finding a likelihood of confusion." *Flocast, LLC v. Movi Fam., LLC,* No. 6:23-cv-1174, 2024 WL 3163485, at *10 (N.D.N.Y. June 25, 2024) (emphasis added) (denying motion to dismiss asserting technical differences between parties' products). And of course, courts may only consider the facts incorporated into the plaintiff's operative complaint. *See id.* at *3.

AeroCine nevertheless asks the Court to consider facts that do not appear anywhere in the First Amended Complaint. ECF No. 19, at 3. AeroCine asserts, for example, that "the public perceives Vermeer as an agricultural and heavy industrial equipment manufacturer, not a software company," and that "consumers would never expect a manufacturer of agricultural, mining, and construction equipment to develop sophisticated augmented reality drone navigation software." *Id.* The FAC, in contrast, alleges that consumers *would* expect a diverse and innovative company like Vermeer to offer cutting-edge products—especially because Vermeer ***already sells*** software for remotely locating and operating manned and unmanned systems. *See* FAC ¶¶ 2, 24–28. These

are the only facts that the Court can and should consider at this stage. AeroCine's unfounded opinions to the contrary cannot provide a basis for dismissal.

## II. AeroCine Misconstrues the Nature of its Infringement

AeroCine's description of its goods and services is highly misleading. Once again relying exclusively on unpled allegations, AeroCine frames its own goods as "cutting-edge augmented reality drone navigation technology" and Vermeer's as merely "heavy industrial machinery." ECF No. 19, at 2–3. This description artificially narrows the scope of Vermeer's product offerings. Like AeroCine, Vermeer also sells software that can be used to remotely locate and operate other machines, including manned and unmanned vehicles.[1] *See* FAC ¶¶ 2–3, 25–26, 33. That overlap, alone, is sufficient to allege proximity of the parties' goods at this stage. *See Pulse Creations, Inc. v. Vesture Grp., Inc.*, 154 F. Supp. 3d 48, 55–56 (S.D.N.Y. 2015) ("Plaintiff has alleged that Defendants use a mark identical to the mark for which Plaintiff holds a trademark to advertise or sell the same type of goods sold by Plaintiff. This suffices to support an allegation of consumer confusion at this stage of the proceedings."); *Flocast*, 2024 WL 3163485, at *10 (same).

AeroCine's focus on software also misconstrues the nature of its own infringement. AeroCine is not using the mark VERMEER to sell a single product while using an otherwise distinct company name. AeroCine is doing business *as* "Vermeer." FAC ¶ 36; *see also* FAC Ex. C, at 2. Put differently, a company called Vermeer is appearing at trade shows, negotiating with customers, and selling products that are not only similar but identical to Vermeer's bona fide goods. *See id.* The broad scope of AeroCine's infringement only increases the likelihood that consumers will be confused into believing that the parties are at least affiliated, if not one and the same.

AeroCine tries to distract from this overlap through a jargon-heavy description of its software's specifications. But the technical details of each party's software—which again do not appear in Vermeer's complaint—are immaterial. Vermeer does not need to demonstrate that the parties' goods are identical or even directly competitive; rather, it must show that consumers are likely to believe that AeroCine or its products are affiliated with Vermeer. *Int'l Info.*, 823 F.3d at 161.[2] This question cannot be divorced from the other factors in the confusion analysis, such as

---

[1] To be clear: neither party sells drones. While AeroCine originally marketed its software as intended for use with drones, it has since expanded that marketing to include software for use with other "manned and unmanned" systems. *See, e.g.*, FAC Ex. C, at 2; FAC ¶ 33.

[2] *See Car-Freshner Corp. v. Am. Covers, LLC*, 980 F.3d 314, 330–31 (2d Cir. 2020) ("The parties were not competitors in the same market. The plaintiff was a sporting goods and apparel retailer, the defendant, an owner and operator of hotels, ran sports-related restaurants. Despite the difference in businesses, we ruled that a reasonable trier of fact could conclude that the defendant's use of the words 'sports authority' and 'the sports authority' was 'similar' to the use of the plaintiff's mark." (citing *The Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955 (2d Cir. 1996))); *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 39–40 (2d Cir. 2016) ("Plaintiff and Defendant operate in closely related [but not identical] fields. Plaintiff provides healthcare services…. Defendant distributes health- and healthcare-related content on screens it places in doctor's offices…. Given the clear subject-matter relationship of Defendant's communications to Plaintiff's commerce, there is every reason to believe that persons familiar with Plaintiff's trademark, who view Defendant's trademark, are likely to assume that Defendant and Plaintiff are related entities." (emphasis added)); *Uber Inc. v. Uber Techs., Inc.*, 521 F. Supp. 3d 455, 465–66 (S.D.N.Y. 2021) ("Defendants' argument is largely premised on the conclusory assertion that no consumer

the strength of Vermeer's senior mark and the identity of AeroCine's infringing mark. *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 258 (2d Cir. 1987) ("[C]ompetitive proximity must be measured with reference to the first two *Polaroid* factors…."). Because AeroCine's goods *are* identical here, and because AeroCine is using Vermeer's exact mark to sell those goods, Vermeer has more than met its pleading burden on this point.

AeroCine argues that "under Vermeer's logic, Microsoft Word and AeroCine's drone navigation software would be 'identical' because both access files, monitor system status, and communicate with other applications." ECF No. 19, at 2. But that analogy only highlights the issue here. If AeroCine was selling its software as "Microsoft," including by using a black-and-white version of the stylized Microsoft name and Windows logo, there would be no question that consumers were likely to be confused regarding the source of that software, regardless of its technical specifications. At the very least, Microsoft's complaint would survive dismissal.

### III.   Vermeer Has Plausibly Alleged Trademark Infringement

The FAC also contains facts sufficient to satisfy the remaining *Polaroid* factors. *See generally* FAC ¶¶ 55–66. As discussed above, the parties' marks and goods are identical, so there is no gap to be bridged. Even if there were, consumers perceive Vermeer as likely to bridge that gap due to the diversification of Vermeer's existing product catalogue and that of the parties' competitors. *Id.* ¶¶ 24–31, 37. There is also direct overlap in the parties' actual and prospective consumers, since both sell their goods to various commercial and governmental entities, including the federal government. *Id.* ¶¶ 30, 36, 38. And both parties market their goods on their websites, at trade shows, and directly to consumers. *Id.* ¶¶ 36–38. Though unnecessary, Vermeer has also pled actual confusion among AeroCine's target consumer base. *Id.* ¶¶ 39–44, 63. These allegations are more than sufficient to plausibly allege a claim of trademark infringement.

### IV.   Vermeer is Unquestionably the Senior User

AeroCine asserts that Vermeer is the junior user because some of its registrations issued after AeroCine's. This argument is a red herring. It is well-settled that trademark seniority arises from use in commerce, not registration. *See* 4 McCarthy on Trademarks and Unfair Competition § 26:53 (5th ed.); *see also id.* § 16:1.50. The dates on which the parties' trademark registrations issued are wholly irrelevant to the issue of priority. Vermeer has been using its VERMEER marks in commerce for decades and is inarguably the senior user here.

Respectfully,

Richard L. Brophy

---

can plausibly confuse plaintiff's graphic design-intensive business with the mobile, digitally oriented, "out of home" advertisements offered by defendants…. But, at the pleading stage, . . . [t]he Court concludes that the Complaint plausibly alleges some competitive proximity between the parties and a likelihood of bridging the gap.").