October 10, 2025

**VIA ECF**

Magistrate Judge Clay H. Kaminsky
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *Vermeer Mfg. Co. v. AeroCine Ventures Inc.*, Case No. 1:25-cv-239-LDH-CHK
       Motion for Informal Discovery Conference

Dear Judge Kaminsky:

Pursuant to Section III.A.2. of this Court's Individual Practices and Rules, Plaintiff Vermeer Manufacturing Company ("Vermeer") and Defendant AeroCine Ventures Inc. ("AeroCine") respectfully submit this joint letter seeking the Court's guidance regarding a dispute as to the purpose and scope of Phase I Discovery. If the dispute cannot be resolved through the Court's informal discovery conference, Vermeer respectfully requests an opportunity to brief a motion for a protective order.

I.   **Vermeer's Claims**

Vermeer brings this action against AeroCine for trademark infringement, unfair competition, and deceptive trade practices.

Vermeer owns multiple federal registrations and common law trademark rights in the mark VERMEER in connection with numerous goods and services, including software for the control and operation of various machines. First Am. Compl. ¶¶ 2, 14–23, ECF No. 17. In 2018, AeroCine filed a trademark application for the mark VERMEER, which it uses as a trade name to sell drone-related software for use in multiple industries. *Id.* ¶¶ 31–36. The parties' respective marks, as currently used in commerce, are represented below:



| AeroCine's Mark | Vermeer's Mark |

Vermeer first learned of AeroCine's mark in July 2022, when AeroCine's CEO sent Vermeer's in-house counsel a message to "see if there was a way to amicably resolve" any issues arising from the parties' identical marks. *Id.* ¶ 49. Three weeks later, while Vermeer was investigating AeroCine's message, AeroCine's trademark counsel sent Vermeer a cease-and-desist letter demanding that it immediately cease using its VERMEER marks and cancel its existing software-related registrations and applications due to a likelihood of confusion with AeroCine's registration. *Id.* ¶ 50. Vermeer promptly filed an administrative proceeding to cancel AeroCine's trademark registration before the USPTO's Trademark Trial and Appeal Board ("TTAB"). AeroCine continued using its accused mark in commerce during the TTAB proceeding, so Vermeer filed this action. *Id.* ¶¶ 39–44, 52. The TTAB proceeding is currently stayed.

### II. Status of Discovery and Meet-and-Confer Efforts

On July 8, 2025, Judge Merkl issued a Case Management Order setting forth two distinct phases of discovery (Dkt. No. 16, at 2):

> **Phase I Discovery** consists of the information that the parties believe needs to be exchanged before a reasoned settlement discussion can take place. In some cases, this may consist of the initial disclosures; in other cases, more extensive exchanges of information may be required. This phase of discovery should be tailored to avoid expense and delay and with the recognition that parties may have to consider resolution with incomplete information. This phase of discovery will presumptively require no more than 60 days. **Phase II Discovery** represents the balance of discovery required to prepare for trial.

In accordance with that Order, the parties held a Rule 26(f) conference and submitted a Case Management Worksheet proposing deadlines for each phase. *See* Dkt. No. 21. On August 13, the Court entered a scheduling order codifying the parties' proposed Phase I Discovery deadline of October 10, 2025. *See* Aug. 13, 2025 Minute Entry and Order.

On September 9—the deadline to serve Phase I Discovery requests (*see id.*)—Vermeer served 9 interrogatories and 17 requests for production, and AeroCine served 16 interrogatories and 88 requests for production. *See* Exs. 1 (interrogatories) and 2 (RFPs). On September 22, Vermeer generally objected to the number and scope of AeroCine's discovery requests and invited AeroCine to either rescind the requests or meet and confer regarding their scope. *See* Ex. 3, at 13. On October 2, the parties held a virtual conference in which Vermeer reiterated its understanding that the purpose of Phase I Discovery is to expedite production of information necessary for a "reasoned settlement discussion" and that requests served during this period must be "tailored to avoid expense and delay." *See* Dkt. No. 16, at 2. To that end, Vermeer invited AeroCine to highlight the requests for which it would like expedited responses consistent with Phase I and reserved the right to seek judicial intervention if the requests remained overbroad.

On October 6, AeroCine agreed to defer thirty-nine document requests to Phase II Discovery, leaving 49 document requests and all 16 interrogatories remaining for Phase I. *See* Ex. 3, at 6. At that time, AeroCine did not agree to defer any interrogatories or to narrow the scope of the remaining 49 document requests. Vermeer responded that the remaining discovery requests were still overbroad and that, as discussed during the meet-and-confer, Vermeer intended to seek the Court's guidance via this letter on October 9 (*i.e.*, the deadline to respond to the requests at issue). In response, AeroCine agreed to defer an additional nine document requests and six interrogatories to Phase II, but did not agree to narrow the remaining 40 document requests or 10 interrogatories.[1]

### III. Vermeer's Position

AeroCine's 40 remaining document requests and 10 interrogatories significantly exceed the scope of Phase I Discovery. The purpose of this phase is to "efficiently resolve disputes without

---

[1] In total, AeroCine has agreed to defer RFP Nos. 2, 5, 8, 13, 18–19, 22–26, 29, 33, 37–38, 41–44, 51–60, 63–65, 67–68, 71–73, 75, 78–83, and 85–88, and Interrogatory Nos. 7, 9–10, and 13–15. For ease of reference, a combined set of the requests as modified is attached as Exhibit 4.

October 10, 2025
Page 3

the need for trial" by serving limited requests focused on information that "*needs* to be exchanged before a reasoned settlement discussion can take place." *Hilb Grp. of N.Y., LLC v. Associated Agencies, Inc.*, No. 1:22-cv-4131, 2023 WL 5979184, at *2 (E.D.N.Y. July 18, 2023) (emphasis added) (employing identical language "pursuant to this Court's obligations under FRCP Rule 1," including a "duty to take affirmative action assisting the parties in all possible settlement options" (quotations omitted)). Given this limited purpose, the Court's Case Management Order specifically noted that Phase I Discovery requests should be "tailored to avoid expense and delay and with the recognition that parties may have to consider resolution with incomplete information." Dkt. No. 16, at 2.

AeroCine's 50 remaining discovery requests nevertheless seek comprehensive marketing, technical, and sensitive business information—much of which would be inappropriate at any stage of discovery—and demand that Vermeer lay out its ultimate case for trial before substantive discovery has even begun. For example, AeroCine's 40 requests for production boundlessly seek "all documents" relating to Vermeer's customers (RFP Nos. 7, 15, 84), marketing (RFP Nos. 6, 14, 66), brand research (RFP Nos. 48, 61, 69, 70), and soup-to-nuts product development (RFP Nos. 4, 9, 27, 32, 49, 74, 76, 77). AeroCine's 10 interrogatories similarly ask Vermeer to provide detailed business and technical information regarding every software good or service that it has offered for more than a decade (ROG Nos. 1, 2, 3, 4), every customer type it has served since its founding in 1948 (ROG No. 11), all research it has ever performed relating to its VERMEER marks (ROG No. 12), detailed business expansion plans (ROG No. 5), soup-to-nuts product development (ROG No. 6), and the full factual and legal basis for various elements of its claims (ROG Nos. 3, 8, 16).

These requests are facially overbroad for Phase I Discovery. The trademarks at issue in this case are not single-product marks, but the parties' respective business names. As a result, a request for information about "all goods and services actually or planned to be sold, offered, or licensed" under Vermeer's asserted marks (*see, e.g.*, RFP Nos. 28, 30, 31, 32, 36, 47; ROG Nos. 11, 12) encompasses ***every good or service*** that Vermeer has ***ever offered or sold*** in the nearly 80 years that it has been doing business as Vermeer. The number and scope of AeroCine's requests are not tailored to avoid expense and delay.

It also remains unclear whether AeroCine needs any Phase I Discovery at all. Unlike Vermeer, AeroCine was represented by the same counsel before the TTAB as in this litigation, and therefore has access to all the confidential written and documentary discovery the parties exchanged in that matter. While those documents cannot be submitted in this litigation (or disseminated to Vermeer's litigation counsel) without violating the TTAB's standard protective order, their contents are still within AeroCine's possession for the purpose of preparing for a reasoned settlement discussion.

Vermeer remains willing to respond to a focused set of requests for information necessary for settlement during Phase I, but the parties fundamentally disagree regarding the meaning of "necessary" at this stage. Under any definition, however, a full accounting of every good or service Vermeer has ever sold, every customer it has sold them to, and the years-long processes by which it developed those products is not necessary for a reasoned settlement discussion and is not tailored to avoid expense and delay.

### IV.     AeroCine's Position

AeroCine respectfully submits that Vermeer's threatened Motion for Protective Order lacks merit. AeroCine has demonstrated substantial good faith, voluntarily deferring six Interrogatories and forty-eight Requests for Production—more than half of its initial discovery. Yet Vermeer maintains that it is not required to respond to any discovery and continues to demand that AeroCine rescind all discovery requests. If Vermeer's position prevails, Phase I settlement discussions would be one-sided—based solely on information favorable to Vermeer while AeroCine remains unable to evaluate the fundamental question of whether Vermeer's claims have merit.

### A. FOLLOWING THE INSUFFICIENT MEET-AND-CONFER, AEROCINE MADE GOOD FAITH EFFORTS TO RESOLVE THE DISPUTE, BUT VERMEER CONTINUES TO DEMAND THAT AEROCINE RESCIND ALL DISCOVERY REQUESTS.

On September 22nd, Vermeer sent a blanket objection to all discovery, demanding wholesale rescission. During the fifteen-minute October 2nd meet-and-confer, Vermeer maintained its blanket objection and demand for total rescission while only discussing two specific Requests for Production. Interrogatories were not discussed at all during the brief meet-and-confer. Notably, the parties never discussed the scope of discovery or what topics each party intended to seek discovery on in Phase I.

Vermeer even agreed that it would produce some information about its Asserted Products when AeroCine attempted to explain that information concerning likelihood of confusion and product similarity was crucial for evaluating Vermeer's claims—particularly given the Court's statement that it was likely to dismiss Vermeer's original Complaint for failure to plead facts showing possible confusion before allowing Vermeer to amend its pleadings.

Yet Vermeer refuses to provide even basic information such as the specific products it contends are being infringed, how its marks are displayed on those products and in marketing materials, what channels of trade it uses to sell its ancillary software for underground construction equipment and heavy machinery management, who its actual customers are, when and where it first used the marks in commerce, or any evidence of actual confusion—all fundamental information essential to evaluating whether consumers could possibly confuse Vermeer's construction and agriculture software with AeroCine's augmented reality drone navigation software for military and aerospace applications.

AeroCine promptly deferred thirty-nine Requests on October 6th, then made additional concessions on October 9th, deferring the majority of its original written discovery requests after Vermeer threatened this protective order with only two days' notice. Despite AeroCine's good faith efforts to resolve the discovery disputes, Vermeer continues to demand that AeroCine rescind all written discovery requests. Vermeer has not proposed any alternative discovery scope and has not identified what information it believes is appropriate for Phase I beyond its own damage-focused requests.

### B. Evaluating the Likelihood of Confusion is Essential for AeroCine to Discuss Settlement.

The Case Management Order limits Phase I discovery to only what "the parties believe needs to be exchanged before a reasoned settlement discussion can take place," explaining that in some cases "more extensive exchanges of information may be required." The Case Management Order contemplates bilateral exchange of information necessary for settlement discussions—not unilateral discovery favoring only the plaintiff. Vermeer's interpretation would transform Phase I into a vehicle for Vermeer to develop its case while preventing AeroCine from evaluating its defenses, which contradicts the collaborative spirit and efficiency goals underlying phased discovery. Vermeer argues it is not required to produce any information. Vermeer believes Phase I should focus narrowly on damages and punitive damages—topics exclusively benefiting Vermeer as the plaintiff seeking monetary relief.

However, AeroCine is not interested in Vermeer's damage calculations. For AeroCine, the threshold settlement question is: "Does Vermeer have a viable case?" Based on the Court's prior skepticism and the deficiencies in Vermeer's pleadings—including the insufficient allegations in the Amended Complaint—this fundamental question remains unresolved. For AeroCine, the most important issues for discussing settlement center on likelihood of confusion—the fundamental issue determining whether Vermeer prevails. Likelihood of confusion analysis is inherently broader than damages calculations, requiring examination of mark and product similarity, channels of trade, target customers, mark strength, actual confusion evidence, and market expansion likelihood.

The Case Management Order does not favor one party's needs over the other's. Vermeer cannot argue that only its informational needs fall within "necessary for reasoned settlement" while AeroCine's needs—evaluating whether liability exists—exceed Phase I's scope. Liability questions logically precede damages in any reasoned settlement analysis. Vermeer seeks extensive discovery on damages while providing AeroCine with no meaningful information to evaluate whether any damages are warranted in the first place. This asymmetric approach undermines the purpose of Phase I, which is to enable both parties to engage in informed settlement discussions.

After deferring the majority of its written discovery requests, AeroCine's remaining Phase I discovery focuses squarely on likelihood of confusion factors. Without this information, AeroCine cannot assess claim viability—particularly critical given the Court's skepticism about Vermeer's original Complaint and the insufficient allegations added in the Amended Complaint.

For AeroCine, evaluating likelihood of confusion is essential to settlement and naturally broader than Vermeer's damages-focused discovery. Vermeer cannot restrict discovery to information that only benefits itself, nor can it refuse to participate in discovery altogether. This attempt to skirt discovery and limit Phase I to topics exclusively beneficial to Vermeer should be rejected.

October 10, 2025
Page 6

Respectfully submitted,

By: _/s/ Melanie E. King_
Andrew T. Lolli
400 Park Avenue, 12th Floor
New York, NY 10022
(212) 209-4400
alolli@atllp.com

Richard L. Brophy (pro hac vice)
Melanie E. King (pro hac vice)
ARMSTRONG TEASDALE LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
(314) 621–5070
rbrophy@atllp.com
meking@atllp.com

*Attorneys for Plaintiff Vermeer Manufacturing Company*

By: _/s/ Casey Scott McKay_
Margaret Farid, Esq.
NYS Bar No.: 5611777
Roy Farid LLP
206 Jericho Turnpike, Fl. 2
Floral Park, New York 11001
(718) 971-1909
mfarid@royfarid.com

Casey Scott McKay
TN Bar No.: 034028
MC Law, PLLC
712 H St NE, Suite 1909
Washington DC, 20002
202.409.1003
casey@mclaw.io

*Attorneys for Defendant AeroCine Ventures Inc.*