**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**BROOKLYN DIVISION**

| | | |
|---|---|---|
| VERMEER MANUFACTURING COMPANY | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No.  1:25-cv-00239-LDH-CHK |
| AEROCINE VENTURES INC. | ) ) | |
| Defendant. | ) ) ) | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO**
**<u>DEFENDANT'S MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

INTRODUCTION..................................................................................................................1

RELEVANT BACKGROUND.............................................................................................2

LEGAL STANDARDS .........................................................................................................3

ARGUMENT .........................................................................................................................4

I.    AEROCINE'S MOTION ENTIRELY RELIES ON FACTS OUTSIDE OF
      THE COMPLAINT. ................................................................................................4

II.   AEROCINE MISSTATES THE LAW OF TRADEMARK SENIORITY
      AND THE SOURCE OF VERMEER'S TRADEMARK RIGHTS. ............................6

III.  VERMEER HAS PLAUSIBLY ALLEGED ITS UNFAIR COMPETITION
      CLAIMS UNDER THE APPLICABLE NOTICE-PLEADING STANDARD............8

      A.    AeroCine is Posing *as* Vermeer to Sell Legally Identical Goods Under an
            Identical Name and Logo. ........................................................................................8

      B.    Vermeer Has Plausibly Alleged Competitive Proximity, Which Must Be
            Analyzed in View of the Strength of Vermeer's Mark and Identity of
            AeroCine's Mark. ...................................................................................................11

      C.    Though Unnecessary at this Stage, Vermeer Has Plausibly Alleged the
            Remaining Polaroid Factors. ..................................................................................13

IV.   GOOD CAUSE EXISTS FOR AMENDMENT, IF NECESSARY............................17

CONCLUSION ..................................................................................................................18

Plaintiff Vermeer Manufacturing Co. ("Vermeer") hereby responds to Defendant AeroCine Ventures Inc.'s ("AeroCine") Motion to Dismiss Vermeer's First Amended Complaint.[1]

## INTRODUCTION

AeroCine initiated this dispute by accusing Vermeer, the senior user of the mark VERMEER by seven decades, of trademark infringement.  Since then, AeroCine has continuously tried to obfuscate Vermeer's right to relief, despite repeatedly acknowledging that the parties' marks are identical, that their goods are directly competitive, and that the similarity of the parties' marks and goods is likely to cause consumer confusion—*i.e.*, the linchpin of a trademark infringement claim.  In its latest attempt, AeroCine tries to subvert the limitations of Rule 12(b)(6) by asking the Court to effectively enter summary judgment in AeroCine's favor using an unfounded factual affidavit and sixteen unauthenticated documentary exhibits.  AeroCine's reliance on these extraneous facts, alone, precludes dismissal.  Even without these procedural errors, AeroCine misstates the law of trademark infringement to argue that its registration trumps Vermeer's unquestionably senior *use* of the VERMEER mark in commerce, but it does not.  AeroCine also asks the Court to step into the shoes of a consumer—without the benefit of discovery or expert testimony—and determine that AeroCine's use of Vermeer's name and logo to sell legally identical goods could not possibly mislead a consumer into believing that the parties are in some way connected.  This argument strains credulity at any stage, but particularly under Rule 12(b)(6).  Vermeer has exceeded its notice-pleading burden, and AeroCine's Motion (Dkt. Nos. 25, 26) should be denied.

---

[1] Vermeer acknowledges that the Court's briefing order and individual practices "ask[ed] that the parties file the motion only once it is fully briefed."  Sept. 2, 2025 Order.  Because AeroCine filed its motion rather than serving it, however, Vermeer does the same with its response.

## RELEVANT BACKGROUND

This is a textbook case of willful trademark infringement.  Vermeer sells a variety of software and technology to customers in multiple industries, including software for the remote operation and tracking of machines.  *See* First Am. Compl. ("FAC") ¶¶ 2, 23–26.  AeroCine, with full awareness of Vermeer's business and senior intellectual property, adopted Vermeer's exact name and logo to sell legally identical goods—*i.e.*, software for the remote operation of machines and other technology.  *Id.* ¶¶ 3, 33–44.  AeroCine does not do business as "AeroCine"; rather, its operations, website, and trade show appearance all occur under the VERMEER name and logo. *Id.* ¶¶ 34–37, 48–49.

Vermeer first learned of AeroCine's infringement in July 2022, when AeroCine's CEO sent Vermeer's in-house counsel a message to "see if there was a way to amicably resolve" any issues arising from the parties' identical marks.  FAC ¶ 49.  Three weeks later, while Vermeer was investigating AeroCine's message, AeroCine's trademark counsel sent Vermeer a cease-and-desist letter in which AeroCine admitted that the parties' marks are identical and the goods and services are in close proximity, before demanding that Vermeer immediately cease using its VERMEER marks and cancel its existing software-related registrations and applications due to a likelihood of confusion with AeroCine's junior mark.  *Id.* ¶ 50–51.  Since then, consumers have already become confused as to the affiliation between the parties.  In May 2024, for example, Vermeer received a letter from the Air & Space Forces Association complaining about AeroCine's failure to make contractual payments in connection with an upcoming trade show appearance under the name "Vermeer." *Id.* ¶¶ 39–41.  To protect its trademark rights against further harm, Vermeer filed this litigation.

## LEGAL STANDARDS

When reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true well-pleaded factual allegations contained within the complaint and draw all reasonable inferences in the plaintiff's favor. *Kelly-Brown v. Winfrey*, 717 F.3d 295, 304 (2d Cir. 2013). A well-pleaded complaint is one that contains sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This low threshold asks for something more than a "sheer possibility" that the defendant acted wrongfully. *Ashcroft v. Iqbal*, 556, U.S. 662, 678 (2009).

When reviewing a motion to dismiss a claim of trademark infringement, the Court generally reviews the allegations under the Second Circuit's eight familiar *Polaroid* factors;[2] however, "the Court only inquires as to whether Plaintiff has plausibly alleged some of the relevant factors, not whether the balance of factors weighs in favor of finding a likelihood of confusion." *Flocast, LLC v. Movi Fam., LLC*, No. 6:23-cv-1174, 2024 WL 3163485, at *10 (N.D.N.Y. June 25, 2024); *Fiber-Shield Indus. Inc. v. Fabricshield Holdings, LLC*, No 2:20-cv-6059, 2023 WL 2734731, at *5 (E.D.N.Y. Mar. 31, 2023).

---

[2] These factors are: (1) the strength of the trademark, (2) similarity of the marks, (3) proximity of the products and their competitiveness with one another, (4) the likelihood that the plaintiff will "bridge the gap" between the two markets, (5) evidence of actual consumer confusion, (6) evidence that the imitative mark was adopted in bad faith, (7) the quality of the defendant's product, and (8) sophistication of consumers in the relevant market. *Polaroid Corp. v. Polaroid Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961).

## ARGUMENT

### I.    AEROCINE'S MOTION ENTIRELY RELIES ON FACTS OUTSIDE OF THE COMPLAINT.

AeroCine's Motion cannot be granted without resolving multiple material factual disputes in its favor and accepting as true dozens of unsupported factual assertions found nowhere in Vermeer's operative complaint.  This blatant violation of Rule 12(b)(6) mandates denial.

Each of AeroCine's arguments rest upon the *seventeen* exhibits attached to its Motion, including an attorney affidavit containing multiple assertions that do not appear anywhere in Vermeer's pleadings.[3]  It is black-letter law, however, that a "district court errs when it considers affidavits and exhibits submitted by defendants or relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss." *Westwide Winery, Inc. v. SMT Acquisitions, LLC*, 511 F. Supp. 3d 256, 261–62 (E.D.N.Y. 2021) (quoting *Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir. 2000)).   "Vacatur is required even where the court's ruling simply makes a connection not established by the complaint alone or contains an unexplained reference that raises the possibility that it improperly relied on matters outside the pleading in granting the defendant's Rule 12(b) motion."  *Id.* (alteration omitted).  Due to the severity of such a procedural violation, the Second Circuit will reverse a dismissal where it simply "cannot be certain" that the district court's consideration of extraneous facts "did not color its analysis of the merits."  *Friedl*, 210 F.3d at 84; *see also Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 234–35 (2d

---

[3] The affidavit notably provides no evidence or explanation for the affiant's personal knowledge of the facts contained therein. *See generally* McKay Declaration, Dkt. No. 26.  Nevertheless, the witness purports to aver the first date on which AeroCine used its unregistered "V" logo (¶ 20), technical specifications of certain AeroCine goods (¶ 21), the sophistication of relevant consumers (¶¶ 22–25, 27), the thought processes behind its customers purchasing behaviors (¶ 27), the general prices of certain *Vermeer* products (¶ 27), and the alleged differences between the parties' trade channels and customer bases (¶¶ 26, 28), in addition to his attempts to authenticate more than a dozen documents that are neither attached to nor referenced in the FAC.

4

Cir. 2016) (vacating dismissal due to reliance documents not integral to the complaint where authenticity and relevance of those documents were disputed).

With the exception of AeroCine's trademark registration (Dkt. No. 26-1), which is already attached as Exhibit B to the FAC and did not need to be resubmitted with AeroCine's Motion, none of AeroCine's exhibits or allegations appear in Vermeer's pleadings and therefore none can be considered under Rule 12(b)(6).  AeroCine makes no attempt to establish that its various exhibits were integral to or incorporated by reference into the FAC, and any attempt to do so for the first time in reply should be disregarded.[4]

AeroCine's reliance on these extraneous allegations is so pervasive that no portion of its Motion is left untainted.  AeroCine directly cites to the McKay Declaration, alone, nearly a dozen times.  *See generally* Def.'s Mem. Law Supp. Mot. Dismiss ("Mot."), Dkt. No. 25-1.  More concerning, however, are the assertions throughout AeroCine's Motion that purport to derive from the FAC but in fact come from the McKay Declaration or one of AeroCine's unincorporated exhibits.  *See, e.g.*, Mot. at 2 (erroneously citing the FAC to support allegations in the McKay declaration concerning the alleged technical specifications of AeroCine's software and the sophistication of its customers), 3 (falsely citing the FAC as identifying Vermeer's customers as

---

[4]  To the extent AeroCine argues that unasserted trademark applications, prosecution histories, or TTAB filings are incorporated into Vermeer's FAC simply because the complaint mentions a mark's existence, for example, that falls well short of the standard for incorporation.  *See, e.g.*, *Missere v. St. John's Univ.*, 1:15-cv-771, 2018 WL 1702000, *2 (E.D.N.Y. Jan. 19, 2019) (explaining that incorporation by reference requires "a clear, definite and substantial reference to the documents," and even a "limited quotation" is not enough).  A plaintiff's "mere notice or possession" of the document is similarly insufficient.  *Nicosia*, 834 F.3d at 231.

Vermeer also notes that Exhibits 2, 5–10 to the Motion are misleadingly titled "Plaintiff's U.S. Trademark Registration," but in fact contain trademark file information unincorporated into the registrations themselves.  To the extent those exhibits contain Vermeer's registrations in addition to unincorporated information, that again was unnecessary, since Vermeer's asserted trademark registrations are attached as Exhibit A to the FAC.

"farmers, construction and mining companies, and other commercial entities making substantial capital investments in heavy machinery" and identifying Vermeer's software as "ancillary software applications that support its core business," neither of which allegations appear in the FAC).  To illustrate the extent to which AeroCine's Motion improperly relies on these unfounded allegations, Vermeer provides a redline version of the Motion deleting every factual allegation originating outside the operative complaint, which is attached hereto as Exhibit A.

AeroCine effectively asks the Court to rule on a motion for summary judgment based on an unauthenticated declaration and irrelevant exhibits without providing Vermeer notice or an opportunity to take discovery on its claims.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).    That request should be denied.

## II. AEROCINE MISSTATES THE LAW OF TRADEMARK SENIORITY AND THE SOURCE OF VERMEER'S TRADEMARK RIGHTS.

AeroCine incorrectly states that Vermeer cannot assert a trademark claim because certain of its trademark registrations were issued after AeroCine's.  But that simply is not true.  Trademark rights in the United States arise from use in commerce—not registration—so the date on which the USPTO issues a trademark registration has no bearing on whether the mark underlying that registration can support an infringement claim.  *See Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 741 (2d Cir. 1998) (explaining trademark law "protects the rights of the first user of a trademark"); *La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1271 (2d Cir. 1974) ("The user who first appropriates the mark obtains [a]n enforceable right to exclude others from using it."); *see also* 4 McCarthy on Trademarks and Unfair Competition §§ 16:1.50, 26:53 (5th ed.).

Similarly, the fact that AeroCine has registered its infringing mark is wholly irrelevant to the issue of priority.  It is AeroCine's *use* of the VERMEER mark in commerce, not its registration,

6

that constitutes infringement; cancellation of the registration is simply one of the remedies that accompanies a finding of likely confusion, in addition to clearing a mark that cannot be used in commerce from the USPTO's trademark register. *See Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co.*, 897 F.3d 413, 419 (2d Cir. 2018) ("As a general matter, registration creates no substantive trademark rights against infringement beyond the common law rights acquired through use of the mark.").

Under the correct legal standard, Vermeer is unquestionably the senior user here. AeroCine reported to the USPTO that it began using its infringing VERMEER mark in 2019. *See* Ex. B to the FAC, Dkt. No. 17-2, at 2. Vermeer, in contrast, has used its senior marks since 1948—seven decades earlier. *See* FAC ¶ 12 & Ex. A. And though AeroCine urges the Court to distinguish the asserted registrations based on the goods they cover, that is inappropriate. Each of Vermeer's trademark registrations are based on the same, continuously used VERMEER mark,[5] and it is those continuous common-law rights that support Vermeer's claims. The only case AeroCine cites for its position, *U.S. Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918), is entirely inapposite. There, the Supreme Court reviewed a plaintiff's *geographic* overreach by attempting to assert a trademark used only in one state against an innocent junior user in a different state. *See* 248 U.S. at 97–98. Because the trademark rights are territorial—and because our system of federal registration would not be invented for another three decades—the Supreme Court held that the plaintiff had no trademark rights to assert in the junior user's state. *See id.* at 97–102. Even so, the Court reiterated the general principle that "the right to a particular mark grows out of its use,

---

[5] Once a trademark registration is granted, it can only be amended to *narrow* the goods it covers; it cannot be expanded. If a party grows its business over time and wants to reflect that expanded use on the federal regsiter, it therefore must file new trademark registrations even if the mark itself remains unchanged.

not its mere adoption." *Id.* at 97. AeroCine's seniority argument is meritless and should be disregarded.

## III.   VERMEER HAS PLAUSIBLY ALLEGED ITS UNFAIR COMPETITION CLAIMS UNDER THE APPLICABLE NOTICE-PLEADING STANDARD.

### A.   AeroCine is Posing *as* Vermeer to Sell Legally Identical Goods Under an Identical Name and Logo.

AeroCine is using an identical name to sell identical goods as Vermeer. That is all Vermeer needs to plead to survive a Rule 12(b)(6) motion. *Pulse Creations, Inc. v. Vesture Grp., Inc.*, 154 F. Supp. 3d 48, 56 (S.D.N.Y. 2015) ("Plaintiff has alleged that Defendants use a mark identical to the mark for which Plaintiff holds a trademark to advertise or sell the same type of goods sold by Plaintiff. This suffices to support an allegation of consumer confusion at this stage of the proceedings."); *CDC Newburgh Inc. v. STM Bags, LLC*, 692 F. Supp. 3d 205, 230 (S.D.N.Y. 2023) (same); *Flocast*, 2024 WL 3163485 at *10 (same); *see Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 38 (2d Cir. 2016) (emphasizing likelihood of confusion is a "fact-intensive inquiry" inappropriate for resolution at the pleading stage, particularly where the marks are identical or "jaw-droppingly similar").[6]

Vermeer has therefore more than met its pleading burden here.  Vermeer has alleged, for example, that AeroCine runs its website and social media pages and attends trade shows using the name VERMEER, rather than "AeroCine" or any other distinguishing mark. *See* FAC ¶¶ 34, 36. Vermeer has also alleged that the parties sell legally identical goods:  software. *Id.* ¶¶ 2–3.

---

[6] It is telling that the vast majority of cases cited in AeroCine's motion are motions for summary judgment, bench trials, and requests for injunctions—not motions to dismiss. *See, e.g.*, *Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC*, 335 F. Supp. 3d 566, 586 (S.D.N.Y. 2018) (motion for summary judgment); *NetJets Inc. v. IntelliJet Grp., LLC*, 678 F. App'x 343 (6th Cir. 2017) (motion for summary judgment); *Computer Assocs. Int'l Inc. v. AJC Computerized Data Mgmt., Inc.*, 889 F. Supp. 630, 637 (E.D.N.Y. 1995) (bench trial); *Strange Music, Inc. v. Strange Music, Inc.*, 326 F. Supp. 2d 481, 491 (S.D.N.Y. 2004) (preliminary injunction).

Specifically, both companies sell software that simulate activity, provide remote performance, and utilize location identification systems. *Id.* ¶¶ 25–26, 33.

AeroCine argues that the parties' goods differ on a minute technical level, but that is a red herring. This is not a patent infringement case; what matters for unfair competition is the similarity of goods in the eyes of consumers. Because consumer perception cannot be ascertained without the benefit of discovery, however, Vermeer needs only to allege that the types of goods the parties sell are similar at this stage.[7] By plausibly alleging that the parties' goods are identical, Vermeer has far exceeded this standard. *See Pulse Creations*, 154 F. Supp. 3d at 55–56; *Flocast*, 2024 WL 3163485, at *10.

AeroCine asks the Court to find as a matter of law that the parties' goods are so dissimilar as to render confusion impossible, despite its use of an identical business name. *See* Mot at 11. AeroCine urges the Court to follow the reasoning of *MidCap Bus. Credit, LLC v. MidCap Fin. Tr.*, 655 F. Supp. 3d 193, 204-05 (S.D.N.Y. 2023), which it describes as "granting dismissal where products and markets were so dissimilar that no question of fact was presented." Mot. at 8, 11. But the Court in *MidCap* ultimately held ***the exact opposite***. After initially granting a motion to dismiss for the reasons AeroCine asserts, the court subsequently ***vacated*** its own dismissal because

---

[7] AeroCine's argument for technical distinction also entirely relies on extraneous factual allegations, and therefore cannot be considered. To describe its own software, for example, AeroCine cites to its attorney affidavit and archived internet webpages, not the FAC. *See* Mot. at 2. AeroCine similarly cites unpled exhibits to describe Vermeer's software, despite AeroCine's complete lack of direct or personal knowledge regarding Vermeer's software specifications. *See id.* 3–5 (referring to Vermeer Terrain Mapping System, DigiTrak, Compass, and Vermeer Projects Suite, none of which are individually described nor named in the FAC). Moreover, AeroCine's assertions rely on a logical fallacy that the software described on cherry-picked, unauthenticated webpages must be the only type of software that Vermeer sells. That fallacy finds no support in the pleadings or the law. *See Nicosia*, 834 F.3d at 234–35 (reversing dismissal where defendant submitted documents, the "accuracy and authenticity of" which the plaintiff disputed, and which even if true did "not exclude the possibility" that plaintiff's allegations were accurate).

it had "applied too high a bar in judging the plausibility of plaintiff's key allegations." *MidCap Bus. Credit, LLC v. MidCap Fin. Tr.*, No. 1:21-cv-7922, 2023 WL 12141718, at *1 (S.D.N.Y. May 23, 2023). Specifically, the court vacated its findings related to consumer perceptions and likelihood of confusion because "such a finding, at this stage of the case, requires findings about the market of midcap lending and the understandings of borrowers, and the court lacks expertise to make such finding," and because the court's prior demand for proof at this stage "***expressed a view of the merits, and not of the plausibility of allegations***." *Id.* (emphasis added). The same reasoning forecloses dismissal here.[8]

In essence, AeroCine asks the Court to step into the role of a consumer walking through a trade show, passing booths labeled ROLLS-ROYCE and HONEYWELL—brands that not known amongst the general public for selling defense-oriented goods—and decide that such a consumer could approach a booth bearing the VERMEER name and logo yet somehow presume that such a booth could not possibly be operated by the true Vermeer. *See* FAC ¶¶ 36–38. That simply is not a Rule 12(b)(6) question. *See Guthrie Healthcare Sys.*, 826 F.3d 27, 28 (2d Cir. 2016); *MidCap*, 2023 WL 12141718, at *1; *See Uber Inc. v. Uber Techs., Inc.*, 521 F. Supp. 3d 455, 465–66 (S.D.N.Y. 2021) ("Defendants' argument is largely premised on the conclusory assertion that no consumer can plausibly confuse plaintiff's graphic design-intensive business with the mobile,

---

[8] The handful of remaining cases that AeroCine cites are factually and legally inapposite, as each concerned a case where the marks were distinguishable *and* the parties' goods were of different types serving wholly different purposes. *See, e.g.*, *JTH Tax LLC v. AMC Networks Inc.*, 694 F. Supp 3d 315, 337–37 (S.D.N.Y. 2023) (tax services vs. TV show); *Fortres Grand Corp. v. Warner Bros. Entertainment Inc.*, 763 F.3d 696 (7th Cir. 2015) (software product name vs. "use" of the mark as a generic word in a movie); *Down to Earth Organics, LLC v. Efron*, No. 22-cv-06218 (NSR), 2024 WL 1376532, at *7–8 (S.D.N.Y. March 31, 2024) (finding the mark of a wellness company that engaged in social media, iced tea manufacturing, and clothing production is dissimilar to the mark of a Netflix TV Series starring Zac Efron where the marks themselves were not identical).

digitally oriented, "out of home" advertisements offered by defendants. . . . But, at the pleading stage, . . . [t]he Court concludes that the Complaint plausibly alleges some competitive proximity between the parties and a likelihood of bridging the gap.").

Even if it was, Vermeer has plausibly alleged that a consumer would be confused in that scenario.  The competitive proximity between the goods offered under two competing marks cannot be reviewed in the abstract; it must be analyzed in light of the strength of the senior mark and the identity of the defendant's infringing mark.  *See Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 258 (2d Cir. 1987).  Here, that means that the similarity of the parties' software cannot provide an independent basis for dismissal while ignoring the fact that AeroCine is using a mark identical to Vermeer's billion-dollar brand.  *See id.* (The unparalleled strength of Mobil's mark demands that it be given broad protection against infringers.").

Vermeer has plausibly alleged that its mark is strong, that AeroCine's infringing mark is identical, and that the parties' goods are legally identical.  AeroCine has presented no basis on which to find that a consumer would know the technical specifications of the parties' respective software, or that any aspect of AeroCine's business dealings would disabuse a confused customer of its presumption that the parties are one and the same, or at least affiliated.  If, for example, AeroCine had instead called itself "Microsoft" and used a black-and-white version of the MICROSOFT name and Windows logo, any technical distinctions between its goods and bona fide Microsoft software would not support dismissal.  AeroCine's request for dismissal should be denied.

### B. Vermeer Has Plausibly Alleged Competitive Proximity, Which Must Be Analyzed in View of the Strength of Vermeer's Mark and Identity of AeroCine's Mark.

Even if the parties' goods were not legally identical, they would still be similar enough to plausibly allege trademark infringement. Goods do not need to be identical or even directly

competitive to cause confusion. *See Car-Freshner Corp. v. Am. Covers, LLC*, 980 F.3d 314, 330–31 (2d Cir. 2020) (describing *The Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955 (2d Cir. 1996)) ("The parties were not competitors in the same market. The plaintiff was a sporting goods and apparel retailer, the defendant, an owner and operator of hotels, ran sports-related restaurants. Despite the difference in businesses, we ruled that a reasonable trier of fact could conclude that the defendant's use of the words 'sports authority' and 'the sports authority' was 'similar' to the use of the plaintiff's mark."); *Guthrie*, 826 F.3d at 39–40 ("Plaintiff and Defendant operate in closely related [but not identical] fields. Plaintiff provides healthcare services. . . . Defendant distributes health- and healthcare-related content on screens it places in doctor's offices. . . . Given the clear subject-matter relationship of Defendant's communications to Plaintiff's commerce, there is every reason to believe that persons familiar with Plaintiff's trademark, who view Defendant's trademark, are likely to assume that Defendant and Plaintiff are related entities."); *Virgin Enters Ltd. v. Nawab*, 335 F.3d 141, 149–51 (2d Cir. 2003) (holding close proximity between a wireless telephone retailer and an "electronic apparatus" retailer that does not sell wireless telephones).

Indeed, "two marks ['on any goods or services'] can be confusingly similar even if they are technically in different industries." *Ultra Recs., LLC v. Ultra Int'l Music Publ'g, LLC*, No. 1:22-cv-9667, 2024 WL 3678432, at *2 (S.D.N.Y. Aug 6, 2024); *see Tiger Lily Ventures Ltd. v. Barclays Capital Inc.*, 35 F.4th 1352, 1363 (Fed. Cir. 2022) (concluding the goods and services between a financial services firm and a bar/restaurant similar were sufficient to threaten confusion because the financial services firm promoted itself on products such as whiskey decanters and beverage coolers). The question at large is whether the products and services of two companies are connected enough to cause confusion to some extent or in some manner among their

consumers.  The consumer does not even to believe that the goods of one company are sourced from another; it is enough for a consumer to be likely to mistakenly assume any "sponsorship, affiliation or connection" between the two businesses.  *Int'l Info. Sys. Certification Consortium, Inc. v. Sec. Univ., LLC*, 823 F.3d 153, 161–62 (2d Cir. 2016) (collecting cases).

The fact that both Vermeer and AeroCine sell software in connection with unmanned machinery and technology—even if the technical specifications of their software differs—is more than enough to meet this pleading standard. FAC ¶¶ 2–3, 29, 33. Even if Vermeer's software was only offered as "ancillary" to its other goods, as AeroCine contends without support, that would not change the fact that both types of software offer job simulation, remote performance, and location identification.  *Id.* ¶¶ 25–26, 33.  That is enough to allege competitive proximity here, particularly in light of the strength of Vermeer's mark and the identity of AeroCine's infringing mark.  AeroCine's motion to dismiss should be denied.

### C. Though Unnecessary at this Stage, Vermeer Has Plausibly Alleged the Remaining Polaroid Factors.

Vermeer "has alleged that [AeroCine] use[s] a mark identical to the mark for which Plaintiff holds a trademark to advertise or sell the same type of goods sold by Plaintiff," which "suffices to support an allegation of consumer confusion at this stage of the proceedings."  *Pulse Creations*, 154 F. Supp. 3d at 55–56.  The Court need not inquire as to "whether the balance of factors weighs in favor of finding a likelihood of confusion."  *Flocast*, 2024 WL 3163485, at *10. Nevertheless, the balance of *Polaroid* factors weigh in Vermeer's favor here.

i.    Bridging the Gap

Because Vermeer has plausibly alleged that the parties' goods are identical, there is no gap to bridge.  *See Googly Eye Cru, LLC v. Fast Retailing USA, Inc.*, No. 1:24-cv-709, 2025 WL 692125, at *5 (S.D.N.Y. Mar. 4, 2025).   Vermeer has nonetheless plausibly alleged facts

supporting this factor.[9] "Bridging the gap refers to the likelihood that [Vermeer] will enter [AeroCine's] market in the future, '*or* that consumers will perceive [Vermeer] as likely to do so.'" *Googly Eye Cru, LLC v. Fast Retailing USA, Inc.*, No. 1:24-cv-709, 2025 WL 692125, at *5 (S.D.N.Y. Mar. 4, 2025) (emphasis added) (quoting *Star Indus., Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 387 (2d Cir. 2005)).  This factor is satisfied even where "there is no present intention to bridge the gap, [but] consumers will assume otherwise and conclude, in this era of corporate diversification, that the parties are related companies." *N.Y.C Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 338 (S.D.N.Y. 2010) (quotations omitted)).  Likewise, "[t]he absence of an intent to bridge the gap does not negate a finding of a likelihood of confusion" where at least some of the other *Polaroid* factors are present.  *Mobil*, 818 F.3d at 259.

The First Amended Complaint demonstrates that Vermeer has long offered a diverse product selection used in a variety of industries and, as a result, is known to consumers for offering "cutting-edge" technology before its competitors—including software for the operation of machines.  FAC ¶¶ 24–31, 61.  For this reason alone, consumers would be likely to believe that Vermeer has added yet one more software to its collection.  Vermeer has also established that there is no gap to bridge between the parties' industries.  AeroCine describes itself as a company for "Aviation and Aerospace Component Manufacturing."  *Id.* ¶ 33.  Vermeer recently partnered with space-resources company Interlune to develop and market a remotely controlled an operated

---

[9] Where products or services are already in competitive proximity, there is no gap to bridge. *Googly Eye Cru, LLC*, slip op. 5; *see also Virgin Enters. Ltd.*, 335 F.3d at 151 (making clear that the competitive proximity and bridging the gap factors are complementary to each other). Also, a plaintiff's intention to bridge the gap merely "helps to establish a future likelihood of confusion," *Educ. Testing Serv. Touchstone Sci. Assc's, Inc.*, 739 F. Supp. 847, 852 (S.D.N.Y. (quoting *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 874 (2d Cir. 1986)), for its absence "does not negate a finding of a likelihood of confusion." *Mobil Oil Corp.*, 818 F.2d at 259 (citing *Scarves by Vera, Inc. v. Todo Imports Ltd.*, 544 F.2d 1167, 1174 (2d Cir. 1976)).

machine in space. *Id.* ¶¶ 29–31; *see also id.* ¶ 36 (illustrating AeroCine's participation in trade shows focused on the intersection between government aviation, and industrializations). These allegations are more than sufficient to plausibly allege that consumers are likely to believe that Vermeer has or will bridge the gap between the parties' goods, to the extent one exists.

        ii.   <u>Actual Confusion</u>

"[I]t is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion." *Guthrie Healthcare Sys.*, 826 F.3d at 45; *Cree, Inc. v. Xiu Ping Chen*, No. 1:16-cv-1065, 2017 WL 3251580, at *6 (E.D.N.Y. July 28, 2017) ("[I]f actual confusion need not be shown to ultimately prevail, then it similarly need not be pled."). "This is particularly true when an infringing product or service," such as AeroCine's, "has been on the market for only a short time," and the marks are so identical that consumers are unlikely to realize they have been confused. *See N.Y.C. Triathlon, LLC*, 704 F. Supp. 2d at 318; *Tiger Lily Ventures Ltd.*, 35 F.4th at 1364 ("[T]he absence of evidence is not always evidence of absence.").

Once again, Vermeer has exceeded its pleading burden by alleging that it received a letter from the Air & Space Forces Association intended for AeroCine. FAC ¶¶ 39–41. AeroCine argues this was mere "administrative confusion," but that is both irrelevant and unsupported by the record. At the pleading stage, "descriptions of confusion among businesses, official bodies and members of the public provide some factual support for the plausibility of plaintiff's claims." *Uber Inc.*, 521 F. Supp. 3d at 464; *Midcap Bus. Credit, LLC v. Midcap Fin. Trust*, 2024 WL 3606244, at *2 (S.D.N.Y. July 31, 2024) (finding "substantial actual confusion" where plaintiff was "congratulated by industry members on an award given to defendants" and "respectable organizations such as Law360 and KPMG released documents referring to defendants when they should have referred to plaintiff"). A misdirected letter from a trade association comprising

AeroCine's current or prospective customers is therefore more than sufficient to plausibly allege actual confusion at this stage.

### iii.    Defendant's Bad Faith

A defendant's bad faith is not of significant relevance with respect to consumer confusion. *Virgin Enters. Ltd.*, 335 F.3d at 151. Nevertheless, this factor considers "whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill, and any confusion between his and the senior user's product. The defendant's awareness of plaintiff's mark may give rise to an inference of bad faith, which is bolstered if the defendant offers no credible explanation for its adoption of the mark." *N.Y.C. Triathlon, LLC*, 704 F. Supp. 2d at 319 (quotations omitted).  Here, AeroCine does not dispute that it has been aware of Vermeer's marks since at least 2018, when it submitted documents to the USPTO evidencing that awareness.  *See* FAC ¶¶ 46.  Nor does AeroCine dispute that it drastically altered the design of its stylized VERMEER mark and "V" logo to closely resemble Vermeer's shortly thereafter.  *See id* ¶ 47. Further, AeroCine recognized that it would need Vermeer's permission to use the VERMEER mark in commerce, only to later forego this acknowledgement by sending a cease-and-desist letter three weeks later. *Id.* ¶¶ 49–50.  These allegations are sufficient to plausibly allege that AeroCine adopted its infringing marks with intent to capitalize on Vermeer's goodwill and reputation.

### iv.    Quality of Defendant's Products or Services

Like bad faith, quality of goods often does not bear directly on the issue of consumer confusion.  *See Virgin Enters. Ltd.*, 335 F.3d at 151; *N.Y.C. Triathlon, LLC*, 704 F. Supp. 2d at 320.  While discovery is necessary to ascertain the quality of AeroCine's software and consumer perception of that software, the facts alleged in the FAC are sufficient to satisfy this factor at this stage.  Specifically, the Air & Space Forces Association's letter complaining about AeroCine's failure to make contractual payments demonstrates the type of reputational harm that AeroCine's

wrongful use of the VERMEER mark is already causing to Vermeer. FAC ¶¶ 39, 41. Accordingly, although this factor has only minor influence, it plausibly supports Vermeer's claims.

        v.   <u>Sophistication of Buyers</u>

The sophistication of consumers is not particularly material when a defendant is using an identical business name to the plaintiff, since "[e]ven sophisticated consumers may be confused when two parties' marks and services are highly similar." *N.Y.C. Triathlon, LLC*, 704 F. Supp. 2d at 320 (citing *Morningside Grp. Ltd. v. Morningside Cap. Grp., LLC*, 182 F.3d 133, 143 (2d Cir. 1999)). AeroCine's Motion repeatedly claims that the parties' consumers are highly sophisticated (Mot. at 2, 17–19), but that fact does not appear anywhere in the FAC. In reality, neither party can definitely state the sophistication level of the other's customers—or the perceptions of those consumers—without the opportunity for third-party discovery. This factor is therefore neutral at this stage.

**IV.    GOOD CAUSE EXISTS FOR AMENDMENT, IF NECESSARY.**

Though amendment is not necessary here because Vermeer has plausibly alleged its unfair competition claims, Vermeer respectfully requests an opportunity to amend in the event of dismissal. *See Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d. Cir. 2006) ("Without doubt, this circuit strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)."); *Dejesus v. HF Mgmt. Servs., LLC*, No. 1:12-cv-1298, 2012 WL 5289571, at *2 (E.D.N.Y. Oct. 23, 2012) (granting plaintiff opportunity to replead after a Rule 12(b)(6) dismissal), *aff'd*, 726 F.3d 85 (2d Cir. 2013).

Since the time Vermeer filed the FAC, it has received discovery responses from AeroCine further supporting its trademark claims and refuting the allegations asserted for the first time in AeroCine's Motion. Vermeer does not attach the responses here to avoid further violation of Rule 12(b)(6); however, for the exclusive purpose of establishing good cause to amend, Vermeer

proffers that AeroCine's discovery responses admit core facts relevant to infringement, including an admission that "Vermeer has now entered the software market, creating direct competitive overlap with AeroCine's business." *See* Dkt. No. 29-1, at 5, 11. And despite the statements in AeroCine's factual affidavit definitively asserting knowledge about consumer perceptions of the parties' businesses and marks, AeroCine's discovery responses—which it served *after* filing its motion—state under no uncertain terms that such information is "not within AeroCine's knowledge or control." *Id.* at 12–13; Dkt. No. 29-2, at 5. Most importantly, Vermeer's discovery responses provide additional evidence of actual confusion, including instances of Vermeer equipment being erroneously shipped to AeroCine and third parties attempting to contact Vermeer via AeroCine's website (www.getvermeer.com). *See* Dkt. No. 29-1, at 15. For these reasons, Vermeer respectfully requests an opportunity to amend if the Court deems it necessary.

## CONCLUSION

Vermeer has exceeded its burden at this stage by plausibly alleging that AeroCine is selling legally identical goods under a mark identical to Vermeer's senior mark. These allegations are all that is necessary to survive dismissal under Rule 12(b)(6). Even if they were not, Vermeer has plausibly alleged that the majority of the *Polaroid* factors weigh in its favor. AeroCine's Motion should therefore be denied. In the event of dismissal, however, Vermeer respectfully requests opportunity to amend so it may plead additional facts obtained since the filing of the FAC.

Dated:  October 29, 2025                    Respectfully submitted,

                                            By: */s/ Richard L. Brophy*
                                            Andrew T. Lolli
                                            400 Park Avenue, 12th Floor
                                            New York, NY 10022
                                            (212) 209-4400

alolli@atllp.com

Richard L. Brophy (*pro hac vice*)
Melanie E. King (*pro hac vice*)
ARMSTRONG TEASDALE LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
(314) 621–5070
rbrophy@atllp.com
meking@atllp.com

*Attorneys for Plaintiff Vermeer*
*Manufacturing Company*