# EXHIBIT A

## Redlined Memorandum in Support of AeroCine's Motion to Dismiss

**IN THE UNITED STATES DISTRICT COURT**
**THE EASTERN DISTRICT OF NEW YORK**
**BROOKLYN DIVISION**

— — — — — — — — — — — — — — — — — — — — — — — — — — — — X

**VERMEER MANUFACTURING COMPANY**

       *Plaintiff,*

       *v.*                    **Case No: 1:25-cv-00239-LDH-CHK**

**AEROCINE VENTURES INC.**

       *Defendant.*

— — — — — — — — — — — — — — — — — — — — — — — — — — — — X

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Defendant AeroCine Ventures Inc. ("AeroCine"), by and through counsel, respectfully submits this Memorandum of Law in Support of its Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) the Amended Complaint (ECF No. 17) filed by Plaintiff Vermeer Manufacturing Company ("Vermeer"), and, in support thereof, states as follows:

i

## ISSUES

I.  Four of Vermeer's six Asserted Marks cannot support trademark infringement claims because two registrations cover only physical machinery without any software coverage, and two others are junior to AeroCine's established rights from 2018, eliminating any basis for infringement claims and leaving only two narrow registrations covering software for underground construction and managing machinery that are substantially dissimilar from AeroCine's software for augmented reality drone navigation.

II.  Vermeer failed to allege facts that could plausibly support its infringement claims because the parties' software is substantially dissimilar—~~AeroCine's specialized augmented reality drone navigation software versus Vermeer's ancillary software for underground construction and managing heavy machinery for farming, construction, and mining—operating in entirely different technological domains and serving different sophisticated customer bases through separate commercial channels~~, with Vermeer's sole example of "confusion" being an irrelevant administrative billing error by an unrelated third party that actually demonstrates the absence of consumer confusion.

III.  Vermeer's speculative gap-bridging argument fails to state plausible facts showing Vermeer could bridge the gap because Vermeer fails to allege intent, offers no concrete expansion plans beyond reactive trademark filings for the same ~~underground construction and machine management~~ software it already provides, fails to allege consumer awareness of intent, and attempts to bridge an unbridgeable technological chasm between software for underground construction/managing heavy machinery and sophisticated augmented reality drone navigation software.

IV.  Vermeer's state law claims fail because they depend on the same likelihood of confusion showing as the federal claims and require bad faith and predatory intent—none of which Vermeer plausibly alleged in the Amended Complaint.

# TABLE OF AUTHORITIES

**U.S. SUPREME COURT CASES**

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ……………………………………..……..…….…..…... 7, 9, 11

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) ……………………………………………..………………..… 7, 9

*United Drug Co. v. Theodore Rectanus Co.*
  248 U.S. 90 (1918) ……………..………………………………………………….... 9


**SECOND CIRCUIT CASES**

*C.L.A.S.S. Promotions, Inc. v. D.S. Mags., Inc.*
  753 F.2d 14 (2d Cir. 1985) …………………………………………..…………. 22

*Estee Lauder Inc. v. The Gap, Inc.*
  108 F.3d 1503 (2d Cir. 1997) ……………………….……………………..…. 19

*Hormel Foods Corp. v. Jim Henson Prods., Inc.*
  73 F.3d 497 (2d Cir. 1996) …………………………...……………………… 19

*Lang v. Retirement Living Publishing Co.*
  949 F.2d 576 (2d Cir. 1991) …………………………………….…..…… 12, 19, 21

*Mushroom Makers, Inc. v. R.G. Barry Corp.*
  580 F.2d 44 (2d Cir. 1978) …………………………………...…………….. 19

*Star Indus., Inc. v. Bacardi & Co.*
  412 F.3d 373 (2d Cir. 2005) …………………………………………..….. 17-18

*Virgin Enters. v. Nawab*
  335 F.3d 141 (2d Cir. 2003) …………………………………………………….. 11


**OTHER CIRCUIT CASES**

*Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc.*
  718 F.2d 1201 (1st Cir. 1983) ……………………………………………… 16, 23

*Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*
    269 F.3d 270 (3d Cir. 2001) ………………………………………………. 14, 19, 23

*Com. Nat. Ins. Servs., Inc. v. Com. Ins. Agency, Inc.*
    214 F.3d 432 (3d Cir. 2000) ……………………………………………….. 23

*Eastland Music Group, LLC v. Lionsgate Entertainment, Inc.*
    707 F.3d 869 (7th Cir. 2013) …………………………………………....…… 11-12

*Fortres Grand Corp. v. Warner Bros. Entertainment Inc.*
    763 F.3d 696 (7th Cir. 2014) …………………….…………………......…… 11-12

*Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*
    931 F.2d 1100 (6th Cir. 1991) ……………………………………………..... 16

*M2 Software, Inc. v. M2 Commc'ns, Inc.*
    450 F.3d 1378 (Fed. Cir. 2006) …………………………………….……………… 13

*Murray v. Cable Nat. Broad. Co.*
    86 F.3d 858 (9th Cir. 1996) …………………………………....……..... 11-12

*NetJets Inc. v. IntelliJet Grp., LLC*
    678 F. App'x 343 (6th Cir. 2017) ………………………….…………….…… 13

*PC Club v. Primex Techs., Inc.*
    32 F. App'x 576 (Fed. Cir. 2002) ……………………………………….…… 13

**DISTRICT COURT CASES**

*Computer Assocs. Int'l, Inc. v. AJV Computerized Data Mgmt., Inc.*
    889 F. Supp. 630 (E.D.N.Y. 1995) …………………………………..…………….. 11

*Harlem Wizards Ent. Basketball, Inc. v. NBA Props., Inc.*
    952 F. Supp. 1084 (D.N.J. 1997) …………………………………………..…… 23

*Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC*
    335 F. Supp. 3d 566 (S.D.N.Y. 2018) ……………………..……………….… 10

*It's a New 10, LLC v. Harmon Stores, Inc.*
    No. 17-CV-4231 (JPO), 2017 WL 3208611 (S.D.N.Y. July 28, 2017) ……..…….… 13

*Jackpocket, Inc. v. Lottomatrix NY LLC*
    645 F. Supp. 3d 185 (S.D.N.Y. 2022) …………………………………..………… 23

*Lebewohl v. Heart Attack Grill LLC*
    890 F. Supp. 2d 278 (S.D.N.Y. 2012) ……...……………………………….……. 14, 20

*MidCap Bus. Credit, LLC v. MidCap Fin. Tr.*
    655 F. Supp. 3d 193 (S.D.N.Y. 2023) …………………………………..…………. 8, 11

*Strange Music, Inc. v. Strange Music, Inc.*
    326 F. Supp. 2d 481 (S.D.N.Y. 2004) …………………………………….…. 10, 19

*Uber Inc. v. Uber Techs., Inc.*
    521 F. Supp. 3d 455 (S.D.N.Y. 2021) …………………………………….…..…. 7

*Valador, Inc. v. HTC Corp.*
    241 F. Supp. 3d 650 (E.D. Va.) ……………………………………………….…..… 16

**STATUTES**

Federal Rule of Civil Procedure 12(b)(6) ……………………………..…….…..… 1, 7, 24-25

N.Y. Gen. Bus. Law § 360-l ……………………………………………………… 23

# CONTENTS

FACTS.......................................................................................................................1

    A. AeroCine's Software for Augmented Reality Drone Navigation.................................1

    B. Vermeer's Software for Underground Construction and Managing Machinery...........2

        *1. The Vermeer Terrain Mapping System, DigiTrak, and Compass for Underground Construction and Managing Machinery for Agriculture, Construction, and Mining...3*

        *2. The Vermeer Projects Suite for Jobsite Management.................................................5*

        *3. The (Non-Asserted) '537 Application and the VermeerOne Management Platform. ........................................................................................................................6*

        *4. Vermeer's Two Non-Software Registrations for Class 007 Machinery....................6*

LAW..........................................................................................................................7

ARGUMENT................................................................................................................8

    I. FOUR OF VERMEER'S SIX ASSERTED MARKS ARE EITHER UNRELATED TO SOFTWARE OR TOO JUNIOR TO SUPPORT VERMEER'S CLAIMS...............................................................8

    A. The '115 and '754 Registrations Only Cover Machinery; They Do Not Cover Any Software..............................................................................................................8

    B. The '356 and '357 Registrations Are Junior to AeroCine's Superior Rights...............9

    C. The '606 and '180 Registrations Only Cover Narrow Software Applications for Underground Construction and Managing Heavy Farming and Mining Machinery.........9

    II. VERMEER FAILED TO ALLEGE PLAUSIBLE FACTS THAT COULD SHOW LIKELIHOOD OF CONFUSION BETWEEN FUNDAMENTALLY DIFFERENT SOFTWARE APPLICATIONS.................9

    A. Vermeer's Overly Broad Product Definition Fails as a Matter of Law and Cannot Cure Factual Deficiencies...................................................................................10

    B. Vermeer Failed to Allege Plausible Facts That Could Show Product Similarity Between Substantially Dissimilar Software..........................................................11

        *1. The Amended Complaint Lacks Facts Alleging Product Similarity, Identical Purposes, or Complementary Functions.................................................................12*

        *2. Vermeer Failed to Allege Consumer Expectations of Common Source or Natural Expansion...........................................................................................................14*

    C. Vermeer Failed to Allege Facts Supporting Commercial Channel or Customer Base Similarity.............................................................................................................15

*1. Complete Commercial Separation Across All Business Activities* ........................ 15

*2. Vermeer Failed to Allege Facts Showing Common Sales Targets or Customer Overlap* ........................................................................................................... 16

*3. Vermeer's Trade Show Allegations Demonstrate Distinct Commercial Channels* . 17

D. Years of Coexistence Without Consumer Confusion Demonstrates Implausibility of Vermeer's Claims ........................................................................................ 18

III. VERMEER'S SPECULATIVE "BRIDGING THE GAP" ARGUMENT FAILS FOR LACK OF INTENT AND CONSUMER EXPECTATION .................................................. 19

A. Vermeer Failed to Allege Present Intent to Enter the Augmented Reality Drone Navigation Market ........................................................................................ 20

B. Vermeer Failed to Allege Consumer Awareness or Natural Expectation of Expansion. .................................................................................................... 21

C. Vermeer's Space Partnership Reinforces Rather Than Bridges the Technological Divide ........................................................................................................... 21

D. The Technological Chasm Between the Parties' Software Cannot Be Bridged .......... 22

IV. VERMEER'S STATE LAW CLAIMS FAIL FOR LACK OF LIKELIHOOD OF CONFUSION, LACK OF BAD FAITH, AND LACK OF PREDATORY INTENT ........................... 23

CONCLUSION ........................................................................................................ 24

CERTIFICATE OF WORD COUNT ........................................................................ 26

CERTIFICATE OF SERVICE ................................................................................. 27

EXHIBITS ............................................................................................................. 29

## FACTS

AeroCine owns U.S. Trademark Registration No. 5,927,317 (the "'317 Reg.") in Class 009 for downloadable software for the term VERMEER and ~~uses its '317 Registration and its two unregistered stylized "V" logos (the "Accused Marks") to offer "[s]oftware for augmented reality drone navigation" to customers such as militaries, governments, and aerospace companies. (Ex. 1, McKay Declaration, ¶ 21;~~ Amended Complaint, ¶ 36, ECF No. 17.).

Vermeer—~~a company specializing in manufacturing agricultural, mining, and construction equipment and machinery~~—claims AeroCine is infringing six of its trademarks for the term VERMEER and its stylized "V" logos: U.S. Trademark Registration Nos. 2,593,606 ("'606 Reg."), 3,346,180 ("'180 Reg."), 7,484,356 ("'356 Reg."), 7,295,357 ("'357 Reg."), 1,771,115 ("'115 Reg."), and 4,752,754 ("'754 Reg.") (the "Asserted Marks"). (ECF No. 17, ¶ 14.).

**A.    AeroCine's Software for Augmented Reality Drone Navigation.**

AeroCine's '317 Registration for the term VERMEER was registered on 3 December 2019 for use in Class 009 in connection with "[s]oftware for augmented reality drone navigation." (Ex. 2, Def.'s '317 Reg.). ~~AeroCine has also used two versions of its stylized "V" logo in connection with its VERMEER mark starting in 2018, with the second version in use since at least 26 October 2021.[1] (Ex. 1, McKay Decl., ¶ 20;~~ ECF No. 17, ¶ 34.).

_____

~~[1] (*See* Ex. 3, Internet Archive Entry of Def.'s "V" Logo (v1) from 7 Jul. 2018 (accessed 25 Sept. 2025), *available at* https://web.archive.org/web/20180707152654/http://www.getvermeer.com/; Ex. 4, Internet Archive Entry of Def.'s "V" Logo (v2) from 26 Oct. 2021 (last accessed 25 Sept. 2025), *available at* https://web.archive.org/web/20211026031933/https://getvermeer.com/).~~

1

AeroCine's augmented reality drone navigation software is a "mixed reality and artificial intelligence enabled mission planning and visualization tool. . . . that allows an operator to easily, through the use of intuitive gestures and 3D visualization, conduct mission rehearsals for autonomous systems in a mixed reality environment. . . . [and] allows for the autonomous execution of those missions as well as the 3D visualization of the sensory data generated from the mission." (Ex. 1, McKay Decl., ¶ 21.). AeroCine's software provides real-time computer vision and navigation assistance for aerial drone operations, utilizing augmented reality overlays, three-dimensional flight algorithms, sensor fusion, and real-time visual data processing for drones operating in three-dimensional airspace. (*Id*. at ¶ 25.).

AeroCine markets its specialized software through its website, defense industry channels, and military and aerospace trade shows to sophisticated customers including military agencies, aerospace companies, and government contractors requiring technical training and expertise and often security clearances. (*See id*. at ¶ 22; ECF No. 17, ¶¶ 36-38, 40.). These customers conduct extensive due diligence before purchasing specialized software solutions and require advanced technical capabilities for aerial operations. (Ex. 1, McKay Decl., ¶ 23.).

**B.      Vermeer's Software for Underground Construction and Managing Machinery.**

Vermeer has "designed, manufactured, and sold a variety of industrial and agricultural equipment around the world" under its Asserted Marks, with its primary business involving manufacturing heavy machinery and industrial equipment for "earth moving, excavation, landscaping, and the like." (ECF No. 17, ¶ 5; Ex. 13, Pl.'s Petition for Cancellation, ¶ 5.).[2]

---

[2] Vermeer claims the "Vermeer Industries" include "agriculture; fluid management; landscape; pipeline; recycling; surface mining; tree care; utility installation; vacuum excavation; and wood waste." (Ex. 13, Pl.'s Pet., ¶ 6.).

Vermeer operates ~~through farming, construction, and heavy equipment distribution networks, serving commercial construction and agricultural companies~~ through its website, traditional equipment dealers, and ~~industry-specific~~ trade shows and publications. (ECF No. 17, ¶¶ 2-3, 5, 25-26; *~~see, e.g.,~~* ~~Ex. 10, '754 Reg., pg. 12 (showing Vermeer at a trade show for farming and agricultural equipment)~~). ~~Vermeer's customers are farmers, construction and mining companies, and other commercial entities making substantial capital investments in heavy machinery and industrial equipment for agriculture, construction, mining, and other ground-based operations.~~ (*See* ECF No. 17, ¶¶ 2-3, 5, 25-26.).

Vermeer offers ~~ancillary~~ software applications that support its ~~core~~ business for manufacturing industrial equipment and heavy machinery for farming, construction, and mining. (ECF No. 17, ¶ 25.). According to Vermeer, its software is "use[d] in connection with industrial vehicles to increase job efficiency," including installation planning software and simulation software for training employees on industrial equipment operations. (*Id.*).

Vermeer also provides "various software-related services," including websites and computer applications for accessing and monitoring "**geographic location, productivity, and maintenance of agricultural equipment and vehicles.**" (*Id.* (citing the '356 Reg. and '357 Reg. ~~(referencing the "Vermeer Projects Suite" software)~~ (emphasis in original)).

### *1.* ~~*The Vermeer Terrain Mapping System, DigiTrak, and Compass for Underground Construction and Managing Machinery for Agriculture, Construction, and Mining.*~~

Vermeer's '606 and '180 Registrations are both registered in Class 009, covering "computers used for underground boring and trenching . . . [and] software for"providing three

dimensional maps, locating and identifying buried utilities, bedrock and soils . . . [and] guiding the operation of boring, trenching or other construction equipment . . . [and] generating topography and terrain information," and for "fleet management" of its industrial equipment. (Ex. 5, Pl.'s '606 Reg.; Ex. 6, Pl.'s '180 Reg.).

The specimen for the '606 Registration shows it covers the "Terrain Mapping System"—"a lightweight, bipod mounted laser-ranging instrument" using "a reflective laser for mapping up to 600 ft in distance." (Ex. 5, Pl.'s '606 Reg., pg. 8 (showing the Vermeer Terrain Mapping System as the software specimen). This system consists of "a laser with laser pole and bipod legs connected to a Compaq Windows CE handheld computer," and it records "topography and utility information" that can be "down-loaded (sic) directly into the Atlas Bore Planner 2.1 and 2.1 Pro or into a CAD program" for underground boring and trenching operations. (*Id.*).

The specimen for the '180 Registration shows it covers Vermeer's DigiTrak and Compass. (Ex. 6, Pl.'s '180 Reg., pgs. 8-10, 13-14 (showing the software with Vermeer Compass and DigiTrak software used on heavy machinery)). Vermeer Compass is a website that functions as a user portal for Vermeer's customers and includes information such as product information, user profiles as well as news and events about Vermeer. (*Id.*). DigiTrak is a horizontal directional drilling ("HDD") locating system for "measuring the depth and location of the drill head used in bore planning that allows visualizing underground hazards such as utilities, bedrock, and water tables. (*Id.*; Ex. 16, DigiTrak Prod. Pg.).

4

**2.** *The Vermeer Projects Suite for Jobsite Management.*

Vermeer's '356 and '357 Registrations (both filed in March 2022, years after AeroCine's Accused Marks were first used) are both registered in Class 042, covering software services for agricultural and hay bale data collection and management, farming business operations, field alerts and reporting, and customer/dealer access to machine information as well as application services for developing, hosting and managing software applications, websites, and databases for monitoring geographic location, productivity, and maintenance of agricultural equipment and vehicles. (Ex. 7, Pl.'s '356 Reg.; Ex. 8, Pl.'s '357 Reg.).

According to Vermeer's Petition for Cancellation (referenced in the Amended Complaint) and the specimens submitted with the '356 and '357 Registrations, the '356 and '357 Registrations cover "Vermeer Projects," described as "a subscription-based software tool for organizing jobsite information and making planning and installation more efficient" that creates "one digital record of the entire job that can be shared in real time." (ECF No. 17, ¶¶ 52-53; Ex. 13, Pl.'s Pet., ¶ 28 and pgs. 37-38; Ex. 7, Pl.'s '356 Reg.; Ex. 8, Pl.'s '357 Reg.).

The Vermeer Projects Suite operates in three tiers: (1) basic document management that "make[s] it simple for operations managers to collect, organize, and share important job documentation through the cloud"; (2) "+Mapping" for "visual jobsite mapping with Google Maps integration" that "gives crew leaders the ability to visually capture the jobsite over a Google Maps image, including intended bore path whiteline, pothole locations, locate positions, marked utilities and bore path as-built"; and (3) "+Mapping +Boreplan" which "adds bore line mapping and rod-by-rod bore planning" for drilling operations. (Ex. 7, Pl.'s '356

5

Reg.; Ex. 8, Pl.'s '357 Reg.; Ex. 13, Pl.'s Pet., ¶ 28 and pgs. 37–38; Ex. 14, Vermeer Projects Prod. Pg.). The Vermeer Projects Suite "helps plan and execute drilling projects by providing tools for accurate bore planning, utility mapping and rod-by-rod plans." (*Id.*).

### 3. The (Non-Asserted) '537 Application and the VermeerOne Management Platform.

Vermeer's '537 Application[3]—not asserted in this case, but cited as evidence of Vermeer's intent to bridge the gap—covers VermeerOne. (Ex. 11, Pl.'s '537 App.). VermeerOne is a platform that "integrates all your machine data into a secure online platform" for "managing Vermeer equipment and business operations, including maintenance plans and machine performance tracking." (*Id.*; Ex. 15, VermeerOne Prod. Pg.). VermeerOne allows users to "monitor equipment health, activity and location from anywhere" and "access fault codes, machine location, hours and operational status." (*Id.*). For non-connected machines, VermeerOne provides "easy access to maintenance history, parts manuals, details of owned Vermeer machines and dealer contact information." (*Id.*).

### 4. Vermeer's Two Non-Software Registrations for Class 007 Machinery.

Two of Vermeer's Asserted Marks—the '115 and '754 Registrations—do not cover software at all; instead, they cover Class 007 machinery—e.g., "[p]ower-operated agricultural equipment," "material reducing machines," "earth moving and earth boring machines," "mud mixing machines," "pneumatic piercing tools," "rock pickers, log splitters, scraper blades, tree spades, [and] stump cutters"—without any software. (Ex. 9, '115 Reg.; Ex. 10, '754 Reg.).

---

[3] The USPTO rejected Vermeer's '537 Application in Class 009 for downloadable software, finding the VermeerOne software "is accessed via a website, a Class 042 use," not downloadable software. (Ex. 12, Office Action for Pl.'s '537 App. (12 Aug. 2025)).

## LAW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The plausibility standard requires more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" and demands allegations that rise "above the speculative level." *Id.*; *Twombly*, 550 U.S. at 555. While the standard does not require "detailed factual allegations," it demands "more than a sheer possibility that a defendant has acted unlawfully" and cannot be satisfied by "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation," and no deference is given to conclusory factual allegations, which are not entitled to any assumption of truth. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

Courts considering motions to dismiss may examine the complaint's allegations, attached exhibits, incorporated documents, and any other documents integral to the complaint where the pleading relies heavily on their terms and effect. *JTH Tax LLC v. AMC Networks Inc.*, 694 F. Supp. 3d 315, 328 (S.D.N.Y. 2023).[4]

---

[4] *See also Uber Inc. v. Uber Techs., Inc.*, 521 F. Supp. 3d 455, 465-66 (S.D.N.Y. 2021) (recognizing USPTO applications may be considered when assessing the plausibility of claims).

## ARGUMENT

**I.    FOUR OF VERMEER'S SIX ASSERTED MARKS ARE EITHER UNRELATED TO SOFTWARE OR TOO JUNIOR TO SUPPORT VERMEER'S CLAIMS.**

Of Vermeer's six Asserted Marks, only four are related to software: the '606, '180, '356 and '357 Registrations. Of these four covering software, only two—the '606 and '180 Registrations—were used prior to AeroCine's Accused Marks; and these two ~~narrow~~ registrations related to software ~~only cover ancillary software for underground construction and managing heavy machinery~~—hardly the broad software dominance Vermeer attempts to claim.

**A.    The '115 and '754 Registrations Only Cover Machinery; They Do Not Cover Any Software.**

Vermeer's '115 and '754 Registrations do not cover any software at all; they only cover Class 007 machinery. (Ex. 9, '115 Reg.; Ex. 10, '754 Reg.). The absence of software coverage in these registrations therefore renders them legally irrelevant to claims concerning AeroCine's augmented reality drone navigation software. *See MidCap Bus. Credit, LLC v. MidCap Fin. Tr.*, 655 F. Supp. 3d 193, 204-05 (S.D.N.Y. 2023) (granting dismissal where products and markets were so dissimilar that no question of fact was presented). Software for augmented reality drone navigation bears no relationship to the manufacture of heavy machinery for agriculture, mining, and construction; and consumers seeking cutting-edge augmented reality drone navigation technology would not reasonably assume such software originates from a manufacturer of industrial equipment and heavy machinery. *See infra* §§ II-III. Accordingly, all claims based on the '115 and '754 Registrations must be dismissed. *MidCap Bus. Credit*, 655 F. Supp. 3d at 204-05.

8

**B.      The '356 and '357 Registrations Are Junior to AeroCine's Superior Rights.**

Vermeer's '356 and '357 Registrations were filed in March 2022. ~~(Ex. 7, Pl.'s '356 Reg.;~~ Ex. 8, Pl.'s '357 Reg.). AeroCine's '317 Registration was filed in 2018~~; and AeroCine's use of its stylized "V" logo began in 2018, with AeroCine's second version of its stylized "V" logo in use by October 2021.~~ (ECF No. 17, ¶ 46; ~~Ex. 1, McKay Decl., ¶ 20.; *see also* note 1 and accompanying text.).~~ Therefore, because all of AeroCine's Accused Marks are senior to Vermeer's junior '356 and '357 Registrations, Vermeer's junior registrations cannot support claims for infringement. *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918).

**C.      The '606 and '180 Registrations Only Cover Narrow Software Applications for Underground Construction and Managing Heavy Farming and Mining Machinery.**

The elimination of these four Asserted Marks leaves Vermeer with only its '606 and '180 Registrations covering ~~narrow~~ software applications ~~for underground construction and managing heavy machinery.~~ *See supra* FACTS, § B; *see infra* §§ II-III. These limited registrations covering software ~~for underground construction and managing heavy machinery for agriculture, construction, and mining~~ fall far short of the comprehensive software trademark protection Vermeer claims. *See infra* §§ II-III.

**II.      VERMEER FAILED TO ALLEGE PLAUSIBLE FACTS THAT COULD SHOW LIKELIHOOD OF CONFUSION BETWEEN FUNDAMENTALLY DIFFERENT SOFTWARE APPLICATIONS.**

Vermeer's likelihood of confusion claims fail because the Amended Complaint lacks factual allegations demonstrating that consumers would plausibly confuse AeroCine's augmented reality drone navigation software with Vermeer's ~~underground construction/machine management applications~~. Under *Iqbal* and *Twombly*, Vermeer must

9

allege facts showing plausible—not merely possible—similarity between the parties' offerings. Yet the Amended Complaint contains only conclusory assertions and overly broad characterizations that ignore the fundamental technological and commercial differences between these software products.

### A. Vermeer's Overly Broad Product Definition Fails as a Matter of Law and Cannot Cure Factual Deficiencies.

Vermeer attempts to establish product similarity through the legally insufficient assertion that both parties offer "identical" goods. (ECF No. 17, ¶¶ 58, 61.). According to Vermeer, the parties offer "identical. . . . software for accessing, monitoring, and/or remotely operating vehicles and other systems." (*Id*.). This characterization fails as a matter of law because it describes basic computational functions that all software performs—reading and writing data, monitoring systems, and interfacing with other programs. *See infra* note 6 and accompanying text.

Under Vermeer's definition, any software would be "identical" because all applications necessarily access and process data, monitor performance, and communicate with other systems. *See id*. This approach would obliterate trademark protection in the software industry by reducing all programs to their elementary computational building blocks rather than their distinctive purposes and functionalities. *Strange Music, Inc. v. Strange Music, Inc.*, 326 F. Supp. 2d 481, 491 (S.D.N.Y. 2004) (finding "the fact that both parties' products exist within the same industry is not enough"); *Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC*, 335 F. Supp.

3d 566, 586 (S.D.N.Y. 2018) (merely operating within the same industry insufficient to establish competitive proximity).

Similarly, Vermeer claims it "has never ceased innovating in the field of software and technology." (ECF No. 17, ¶ 27.). But "software and technology" are used in all fields, all businesses, and all industries—this is not a plausible allegation providing proper notice. (*See id*.). This generic allegation could apply to any company in any sector and provides no meaningful information about Vermeer's actual capabilities, intended expansion, or relationship to AeroCine's specialized augmented reality drone navigation software. (*See id*.).

Vermeer's failure to allege specific facts about technological similarity, product use and purposes, target applications, commercial channels, or consumer overlap cannot be cured by overly broad characterizations that would encompass every software application in existence. *See infra* §§ II.B-D. Even under notice pleading standards, conclusory allegations that could apply to any defendant in an industry fail to state a plausible claim. *Iqbal*, 556 U.S. at 678.

**B.      Vermeer Failed to Allege Plausible Facts That Could Show Product Similarity Between Substantially Dissimilar Software.**

Courts may dismiss trademark infringement claims where the goods are so dissimilar that confusion is implausible as a matter of law. *MidCap Bus. Credit*, 655 F. Supp. 3d at 204-05; *JTH Tax*, 694 F. Supp. 3d at 337-40 (complaint dismissed for failing to allege facts to support a likelihood of confusion); *Virgin Enters. v. Nawab*, 335 F.3d 141, 149-50 (2d Cir. 2003) (recognizing that proximity of goods is a critical factor).[5] The similarity of products

---

[5] *See also Murray v. Cable Nat. Broad. Co.*, 86 F.3d 858, 860 (9th Cir. 1996), as amended (Aug. 6, 1996) ("If the court determines as a matter of law from the pleadings that the goods are unrelated and confusion is unlikely, the

factor evaluates competitive relationship by analyzing whether goods serve identical purposes, fall within the same general classification, or function as complementary products, with courts considering both the products' intrinsic nature and the applicable market dynamics. *JTH Tax*, 694 F. Supp. 3d at 337; *Lang v. Ret. Living Pub. Co.*, 949 F.2d 576, 582 (2d Cir. 1991). When assessing competitive proximity between products or services, courts examine market structure factors including the customer base for each product, the advertising methods used, and the distribution channels employed. *JTH Tax*, 694 F. Supp. 3d at 337.

### 1. The Amended Complaint Lacks Facts Alleging Product Similarity, Identical Purposes, or Complementary Functions.

AeroCine's augmented reality drone navigation software processes real-time visual data, overlays digital information onto physical environments, and provides navigation assistance for drones operating in three-dimensional airspace. (Ex. 1, McKay Decl., ¶ 21.). This sophisticated technology requires expertise in computer vision, artificial intelligence, sensor fusion, and advanced flight algorithms designed for aerial operations requiring split-second processing of complex spatial data. (*Id.* at 25.).

Vermeer's software for underground construction and managing heavy machinery serves entirely different functions through fundamentally different technologies. *See supra* FACTS, § B. The Vermeer Terrain Mapping system analyzes underground soil and utilities

---

complaint should be dismissed"); *Eastland Music Group, LLC v. Lionsgate Entertainment, Inc.*, 707 F.3d 869, 871–72 (7th Cir. 2013) ("Eastland Music's complaint does not (and could not plausibly) allege that consumers treat it as the producer or source of the film 50/50, or treat Lionsgate as the producer of the 2003 rap album."); *Fortres Grand Corp. v. Warner Bros. Entertainment Inc.*, 763 F.3d 696, 705 (7th Cir. 2014) ("Fortres Grand has not and could not plausibly allege that consumers are confused into thinking Fortres Grand is selling such a diabolical hacking tool licensed by Warner Bros.").

through stationary laser measurements for boring and trenching operations. (Ex. 5, '606 Reg; Ex. 6, '180 Reg.). Vermeer Projects documents construction activities through cloud-based record management. (Ex. 7, '356 Reg.; Ex. 8, '357 Reg.). VermeerOne tracks maintenance schedules and performance metrics for heavy industrial equipment. (Ex. 11, '537 App.). These applications focus exclusively on ground-based operations involving soil analysis, utility detection, monitoring heavy machinery and industrial equipment, and project documentation—technological competencies entirely distinct from real-time augmented reality drone navigation. *See supra* FACTS, §§ A-B.

The Amended Complaint contains no plausible factual allegations that these software applications use similar technology, serve identical purposes, fall within the same general classification, or function as complementary products. *See JTH Tax*, 694 F. Supp. 3d at 337. The parties' software operates in entirely different technological domains with distinct purposes, capabilities, and applications. *See id.*; *Computer Assocs. Int'l, Inc. v. AJV Computerized Data Mgmt., Inc.*, 889 F. Supp. 630, 637 (E.D.N.Y. 1995) (finding no likelihood of confusion between plaintiff's "Simply Tax" (consumer self-preparation software) and defendant's "TAX$IMPLE" (professional tax preparer software) due to distinct target markets, distribution channels (retail vs. wholesale), pricing, and advertising venues.).[6]

---

[6] *See also It's a New 10, LLC v. Harmon Stores, Inc.*, No. 17-CV-4231 (JPO), 2017 WL 3208611, at *4-6 (S.D.N.Y. July 28, 2017) (dismissing trademark infringement claim where the parties' products were sufficiently dissimilar); *NetJets Inc. v. IntelliJet Grp., LLC*, 678 F. App'x 343, 352-55 (6th Cir. 2017) (finding no likelihood of confusion between software offered by a private aviation company and aircraft brokerage using the INTELLIJET mark because the companies utilized the mark in substantially different ways, served distinct markets, and targeted sophisticated consumers capable of distinguishing between their services); *PC Club v. Primex Techs., Inc.*, 32 F. App'x 576, 578 (Fed. Cir. 2002) (finding computer hardware products are substantially dissimilar enough to avoid any likelihood of confusion); *M2 Software, Inc. v. M2 Commc'ns, Inc.*, 450 F.3d 1378, 1382 (Fed. Cir. 2006) (finding no likelihood of confusion between "M2 COMMUNICATIONS" for medical CD-ROMs and "M2

13

**2. Vermeer Failed to Allege Consumer Expectations of Common Source or Natural Expansion.**

The Amended Complaint contains no factual allegations that consumers purchasing underground construction/machine management software would expect the same company to offer augmented reality drone navigation capabilities, or that users of construction equipment management applications would assume common source affiliation with aerial navigation technology. This absence is fatal because trademark law focuses on consumer perception, not abstract business possibilities. *See Lebewohl v. Heart Attack Grill LLC*, 890 F. Supp. 2d 278, 295-96 (S.D.N.Y. 2012) (finding speculative intentions insufficient).

Vermeer provides no allegations that other companies successfully operate in both markets, that technological developments make such expansion natural, or that the consuming public would find it reasonable for one company to offer both types of software. The stark technological divide between software ~~for underground construction/machine management for farming and mining~~ and software for augmented reality drone navigation makes such consumer expectations implausible. *See supra* § II.B.1.

Moreover, Vermeer's own space partnership with Interlune demonstrates ~~its continued focus on excavation and construction~~—even in extraterrestrial applications. (ECF No. 17, ¶¶ 29-31.). ~~This partnership reinforces that Vermeer is doubling down on ground-based~~

---

Software" for film/music business software due to the unrelated nature of the goods and different trade channels); *Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 288, 298 (3d Cir. 2001) (finding physical and information security products distinct despite similar technology, as their different purposes---theft prevention versus data protection---created minimal functional overlap and unlikely confusion between the marks).

construction and mining expertise rather than expanding toward aerial navigation technology.

*See infra* § III.C.

### C.    Vermeer Failed to Allege Facts Supporting Commercial Channel or Customer Base Similarity.

#### 1. Complete Commercial Separation Across All Business Activities.

Rather than alleging similar commercial operations, Vermeer's factual allegations demonstrate comprehensive separation. AeroCine markets through its website, defense industry channels, and specialized aerospace trade shows to customers requiring security clearances and advanced technical expertise in aerial operations. (ECF No. 17, ¶¶ 36, 39-40.). Vermeer operates through its website as well as farming, construction, and heavy equipment distribution networks serving commercial entities through traditional equipment dealers. (*Id*. at ¶¶ 5, 26.). The Amended Complaint failed to sufficiently allege these commercial channels overlap.

The Amended Complaint also fails to allege overlap in any other commercial activities. (*See generally id*.). It provides no factual allegations that the parties advertise in the same industry publications or media outlets, target the same professional associations or industry groups, or use similar marketing strategies or promotional materials. (*Id*.). The Amended Complaint is equally silent on whether the parties compete for the same government contracts or procurement opportunities. (*Id*.). Even the *potential* government contract Vermeer referenced is with the Department of Energy for providing natural resources—a different world

15

than AeroCine's augmented reality drone navigation work with Department of Defense. (*Id*. at ¶ 30.).[7]

The Amended Complaint failed to allege that the parties market to the same geographic regions or customer segments, use comparable pricing structures or business models, or partner with similar vendors, suppliers, or technology integrators. (*See generally id*.). No allegations address shared distribution partners, resellers, or sales representatives. (*Id*.). The Amended Complaint contains no facts about targeting the same decision-makers within organizations or utilizing the same advertising platforms, industry websites, or digital marketing channels. (*Id*.). These comprehensive omissions demonstrate complete commercial separation between ancillary software ~~for underground construction/machine management for agriculture, construction and mining~~ versus software for augmented reality drone navigation ~~for militaries and aerospace companies.~~

### 2. Vermeer Failed to Allege Facts Showing Common Sales Targets or Customer Overlap.

The Amended Complaint fails to allege any facts showing the parties target the same consumers or that their customer bases overlap. ~~The parties' customers make fundamentally different types of investments requiring different expertise. AeroCine's customers are~~

---

[7] *See Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc.*, 718 F.2d 1201, 1207 (1st Cir. 1983) (finding no product similarity in medical technology sold to different hospital departments because hospitals comprise separate departments with distinct purchasing needs that constitute different markets); *Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1109 (6th Cir. 1991) (products are not "related" because they are in the same general industry; rather, they are "related" when they are marketed and consumed in a way where consumers would reasonably expect they come from the same company); *Valador, Inc. v. HTC Corp.*, 241 F. Supp. 3d 650, 661 (E.D. Va.), aff'd, 707 F. App'x 138 (4th Cir. 2017) (finding no likelihood of confusion where software company's "VIVE" mark (government contracts) and manufacturer's "VIVE" VR headset served different markets with no likelihood of consumer confusion).

specialized users in military and aerospace applications who possess technical expertise in aerial operations and make informed decisions based on specific technological requirements for augmented reality drone navigation, often requiring security clearances and technical certifications. (ECF No. 17, ¶¶ 36-38, 40; Ex. 1, McKay Decl., ¶ 23.). Vermeer's customers are commercial entities making substantial capital investments in specialized heavy machinery and industrial machinery for agriculture, construction, and mining. (ECF No. 17, ¶¶ 2-3, 5, 25-26.). Simply put, AeroCine's customers want augmented reality drone navigation software; Vermeer's customer want heavy machinery and industrial equipment for farming, construction, and mining—there is no overlap.

These different investment models attract different decision-makers within organizations and require different evaluation criteria. The Amended Complaint contains no allegations that the same corporate decision-makers would evaluate both underground construction/machine management software and software for augmented reality drone navigation technology, or that similar procurement processes apply to both types of purchases. (*See generally id*.).

The Amended Complaint contains no allegations that these sophisticated customer bases overlap, that purchasers of underground construction/machine management software would seek augmented reality drone navigation technology, or that the same decision-makers within organizations would evaluate both types of software. (*See id*.). The technical nature of both parties' products requires informed decision-making that precludes confusion. *Star Indus.,*

*Inc. v. Bacardi & Co.*, 412 F.3d 373, 389-90 (2d Cir. 2005) (stating sophistication of consumers "militates against" finding likelihood of confusion).

### 3. Vermeer's Trade Show Allegations Demonstrate Distinct Commercial Channels.

Vermeer's trade show allegations support AeroCine's position rather than undermining it. (*See* ECF No. 17, ¶¶ 36-38.). ~~The Amended Complaint admits Vermeer "did not attend any of the trade shows where AeroCine exhibited,"~~ eliminating any factual basis for consumer exposure to both marks in the same context. (*Id*.). And the Amended Complaint failed to claim the parties' customers attend the same trade shows. (*See id*.).

More significantly, ~~sophisticated trade show attendees distinguish between exhibitors based on their actual products and presentations. Even if an attendee initially approached AeroCine's booth expecting traditional Vermeer construction equipment, they would immediately recognize the error upon seeing augmented reality drone navigation demonstrations rather than heavy machinery displays.~~ (*Compare* ECF No. 17, ¶ 36 ~~*with* Ex. 10, Pl.'s '754 Reg., 12 (showing both parties presenting their products at different trade shows)~~). ~~The technical expertise and security requirements needed for AeroCine's customer base create an additional barrier preventing confusion with traditional construction equipment purchasers.~~

### D.   Years of Coexistence Without Consumer Confusion Demonstrates Implausibility of Vermeer's Claims.

The Amended Complaint's only specific allegation of confusion—a billing error by the Air & Space Forces Association—actually demonstrates the absence of consumer confusion. (ECF No. 17, ¶ 41.). This administrative mistake by a third party with no connection to either

company's customer base constitutes precisely the type of clerical error that trademark law does not protect against. *Estee Lauder Inc. v. The Gap, Inc.*, 108 F.3d 1503, 1511 (2d Cir. 1997); *Lang*, 949 F.2d at 582-83 (informing trademark law protects "against mistaken purchasing decisions and not against confusion generally."); *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 48 (2d Cir. 1978). More critically, this isolated incident after years of parallel use demonstrates that confusion between the parties' products is implausible. *Checkpoint Sys.*, 269 F.3d at 291-92 ("If a defendant's product has been sold for an appreciable period of time without evidence of actual confusion, one can infer that continued marketing will not lead to consumer confusion in the future.").

Vermeer has failed to allege facts plausibly supporting likelihood of confusion between software for augmented reality drone navigation and software for underground construction and machine management for farming, construction, and mining heavy machinery and industrial equipment. The substantially dissimilar software, technological divide, distinct commercial channels, sophisticated non-overlapping customer bases, and absence of actual consumer confusion render Vermeer's claims implausible as a matter of law.

### III.    VERMEER'S SPECULATIVE "BRIDGING THE GAP" ARGUMENT FAILS FOR LACK OF INTENT AND CONSUMER EXPECTATION.

Gap-bridging requires that the senior user demonstrate present intention to enter the junior user's market and that consumers are aware of this intention or would naturally expect such expansion. *Strange Music*, 326 F. Supp. 2d at 493 (citing *Lang*, 949 F.2d at 582); *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 504 (2d Cir. 1996). Vermeer failed to

19

allege facts supporting either requirement, and the ~~technological chasm~~ between software ~~for underground construction/machine management for farming, construction, and mining heavy machinery and industrial equipment~~ and software for augmented reality drone navigation makes bridging implausible as a matter of law.

**A.    Vermeer Failed to Allege Present Intent to Enter the Augmented Reality Drone Navigation Market.**

The Amended Complaint contains no factual allegations that Vermeer intends to enter the augmented reality drone navigation market. ~~Vermeer generically observes that drones "are increasingly used as equipment in many different industries and fields, including in the Vermeer Industries." (Ex. 13, Pl.'s Pet., ¶ 24; *see supra* note 2 and accompanying text.).~~ But this vague industry speculation falls far short of alleging concrete expansion plans toward augmented reality drone navigation software. *Lebewohl*, 890 F. Supp. 2d at 295-96 (requiring "evidence of a concrete expansion plan" rather than speculative intentions). The gap-bridging doctrine protects against dilution of established trademark zones, not hypothetical business ventures. *See id*.

Vermeer's non-asserted '537 Application confirms its ~~continued focus on traditional underground construction/~~machine management applications rather than software for augmented reality drone navigation. (ECF No. 17, ¶ 27.). The application covers only software for managing and monitoring construction, farm, and industrial machinery data ~~representing lateral expansion within Vermeer's existing business, not movement toward augmented reality drone navigation.~~ (*Id*.; ~~Ex. 11, Pl.'s '537 App.~~). This ~~reactive filing~~, submitted after AeroCine

asserted its rights, demonstrates that ~~any alleged expansion intent arose from competitive pressure rather than natural business evolution.~~ (*See* ECF No. 17, ¶ 27.).

**B.    Vermeer Failed to Allege Consumer Awareness or Natural Expectation of Expansion.**

More critically, Vermeer provides no allegations that consumers are aware of any intent to enter augmented reality drone navigation or would naturally expect such expansion. (*See generally* ECF No. 17.). Nor does it contain any allegations that consumers associate Vermeer with augmented reality drone navigation technology or would expect a heavy machinery manufacturer to develop sophisticated augmented reality drone navigation software. (*Id*.). This omission is fatal because expansion intent "unless known by prospective purchasers, does not affect the likelihood of confusion." *Lang*, 949 F.2d at 582. ~~Given the fundamental technological differences between heavy machinery and augmented reality drone navigation systems, consumers would not naturally expect Vermeer to enter AeroCine's specialized market.~~

**C.    Vermeer's Space Partnership Reinforces Rather Than Bridges the Technological Divide.**

Vermeer's partnership with Interlune for lunar excavation equipment actually undermines rather than supports its bridging argument. (ECF No. 17, ¶¶ 29-31.). ~~The space excavator represents geographic expansion of Vermeer's existing ground-based excavation expertise to a new environment—not technological expansion into augmented reality drone navigation software development.~~ (*See id*.).

Underground construction work remains underground construction work regardless of planetary location. (*See id*.). The fundamental technologies for soil analysis, utility detection, excavation guidance, and managing heavy equipment are equally dissimilar to augmented reality drone navigation software whether performed on Earth or the moon. (*Id*.). Vermeer's space partnership demonstrates its continued focus on ground-based excavation operations rather than any movement toward augmented reality drone navigation technology. (*See id*.). This geographic expansion actually reinforces the technological chasm between the parties' products. (*See id*.). A company that develops underground construction software for extraterrestrial applications has not moved closer to developing augmented reality drone navigation software—it has simply applied existing ground-based expertise to a new location. (*See id*.). The space partnership confirms why consumers would not expect Vermeer to enter AeroCine's specialized augmented reality drone navigation market—i.e., the parties' software and markets are substantially dissimilar on all terrestrial bodies. (*See id*.).

**D.    The Technological Chasm Between the Parties' Software Cannot Be Bridged.**

The gap here is wide. The technological requirements for the parties' software represent distinct domains that cannot be bridged. Creating augmented reality drone navigation software requires expertise in computer vision, artificial intelligence, real-time sensor fusion, and three-dimensional flight algorithms—competencies fundamentally different from underground construction and managing heavy machinery for farming, construction, and mining. (*See supra* FACTS, §§ A-B.). AeroCine's software processes real-time visual data for augmented reality

22

~~drone navigation, while Vermeer's applications analyze soil composition and manage ground-based heavy machinery for farming, construction, and mining industrial equipment.~~ (*See id.*).

Courts recognize that significant technical specialization defeats bridging arguments even within related industries. *C.L.A.S.S. Promotions, Inc. v. D.S. Mags., Inc.*, 753 F.2d 14, 18 (2d Cir. 1985) (finding no bridging where both parties operated in publishing but served distinct market segments); *Checkpoint Sys.*, 269 F.3d at 288 ("When two products are part of distinct sectors of a broad product category, they can be sufficiently unrelated that consumers are not likely to assume the products originate from the same mark").[8]

Without plausible allegations of present intent, consumer awareness, or a bridgeable technological gap, Vermeer's gap-bridging theory fails as a matter of law.

## IV. VERMEER'S STATE LAW CLAIMS FAIL FOR LACK OF LIKELIHOOD OF CONFUSION, LACK OF BAD FAITH, AND LACK OF PREDATORY INTENT.

Vermeer's state law claims fail because they depend on the same likelihood of confusion showing as the federal claims, which Vermeer cannot establish. *Jackpocket, Inc. v. Lottomatrix NY LLC*, 645 F. Supp. 3d 185, 229 (S.D.N.Y. 2022); *see supra* §§ I-III. New York's dilution statute requires a predicate finding of trademark infringement. *Jackpocket*, 645 F. Supp. 3d at 229; N.Y. Gen. Bus. Law § 360-l. The total absence of any likelihood of confusion between augmented reality drone navigation software and underground

---

[8] *See also Astra*, 718 F.2d at 1207 (finding no product similarity in medical technology sold to different hospital departments due to distinct purchasing needs and separate markets); *Com. Nat. Ins. Servs., Inc. v. Com. Ins. Agency, Inc.*, 214 F.3d 432, 441 (3d Cir. 2000) (finding no confusion between banking and insurance company marks due to their distinct, highly regulated industries); *Harlem Wizards Ent. Basketball, Inc. v. NBA Props., Inc.*, 952 F. Supp. 1084, 1095 (D.N.J. 1997) (finding no product similarity between professional competitive and entertainment basketball teams).

construction/machine management software precludes both infringement and dilution relief under New York law. *See Jackpocket*, 645 F. Supp. 3d at 229; *see supra* §§ I-III.

New York common law unfair competition requires bad faith or intent to deceive beyond likelihood of confusion. *Jackpocket*, 645 F. Supp. 3d at 229. Similarly, New York's dilution analysis requires factual allegations of predatory intent. *Id*. at 279 (citations omitted). Vermeer did not even attempt to allege any specific bad faith or predatory intent. (*See generally* ECF No. 17, ¶¶ 108-136.). Vermeer's conclusory allegations lack supporting facts and fail basic pleading standards. (*See id*.). Moreover, AeroCine's transparent USPTO registration process and proper enforcement of its senior trademark rights demonstrate good faith conduct rather than predatory behavior. (*Id*. at ¶¶ 46-47, 49-50.).

Having failed to establish the fundamental prerequisite of likelihood of confusion between parties operating in ~~entirely different technological domains—sophisticated augmented reality drone navigation software versus underground construction and machine management applications for farming, construction, and mining industrial equipment—~~ Vermeer's state law claims necessarily fail. The ~~profound dissimilarity between the parties' products, customer bases, and commercial channels~~ renders all state law trademark claims implausible as a matter of law.

## CONCLUSION

Vermeer failed to allege plausible facts showing likelihood of confusion between AeroCine's augmented reality drone navigation software and Vermeer's software ~~for~~

~~underground construction and managing heavy machinery. These substantially dissimilar products serve different purposes, operate in different technological domains, and target distinct customer bases through separate commercial channels.~~ This case presents precisely the scenario Fed. R. Civ. P. 12(b)(6) addresses: conclusory allegations, overly broad product definitions, and fanciful theories of confusion that strain credulity rather than assert the factual allegations necessary to state plausible claims for relief. For the reasons stated above, Vermeer's Amended Complaint should be dismissed with prejudice.

**Dated**: 29 September 2025

Respectfully submitted,

By: /s/ Margaret Farid
Margaret Farid, Esq.
NYS Bar No.: 5611777
Roy Farid LLP
206 Jericho Turnpike, Fl. 2
Floral Park, New York 11001
(718) 971-1909
mfarid@royfarid.com

-and-

By: /s/Casey Scott McKay/
Casey Scott McKay
TN Bar No.: 034028
MC Law, PLLC
1441 U St. NW, Suite 102
Washington, DC, D.C. 20009
202.409.1003
casey@mclaw.io

*Attorneys for Defendant AeroCine Ventures Inc.*

25

## CERTIFICATE OF WORD COUNT

Pursuant to Local Civil Rule 7.1(c), this Memorandum contains less than 8,750 words (excluding the caption, table of contents, table of Authorities, signature blocks, required certificates, and list of exhibits), with 8,163 words total and therefore complies with the word-count limitations.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed using this Court's CM/ECF

notification service, which sent notification of such filing to all pro se parties and counsel of

record on 29 September 2025.

Melanie E. King
Armstrong Teasdale LLP
7700 Forsyth Boulevard
Suite 1800
St. Louis, MO 63105
(314) 621-5070
meking@atllp.com

Richard L. Brophy
Armstrong Teasdale LLP
7700 Forsyth Boulevard
Suite 1800
St. Louis, MO 63105
(314) 621-5070 rbrophy@atllp.com

Andrew T. Lolli
Armstrong Teasdale LLP
7 Times Square, 44th Floor
New York, NY 10036
(212) 209-4400
alolli@atllp.com

Zachary C Howenstine
Armstrong Teasdale
7700 Forsyth Blvd.
Suite 1800
St. Louis, MO 63105
314-621-5070
zhowenstine@atllp.com

*Attorneys for Plaintiff Vermeer Manufacturing Company*

By: /s/ Margaret Farid
Margaret Farid, Esq.
NYS Bar No.: 5611777

27

Roy Farid LLP
206 Jericho Turnpike, Fl. 2
Floral Park, New York 11001
(718) 971-1909
mfarid@royfarid.com

-and-

By: /s/Casey Scott McKay/
Casey Scott McKay
TN Bar No.: 034028
MC Law, PLLC
1441 U St. NW, Suite 102
Washington, DC, D.C. 20009
202.409.1003
casey@mclaw.io

*Attorneys for Defendant AeroCine Ventures Inc.*

# EXHIBITS

Exhibit 1, Declaration of Attorney Casey Scott McKay

Exhibit 2, Defendant's U.S. Registration No. 5,927,317 (filed 9 February 2018; registered 3 December 2019)

Exhibit 3, Internet Archive Entry of Defendant's Stylized "V" Logo (v1) on getvermeer.com on 7 July 2018 (last accessed 25 September 2025), *available at* https://web.archive.org/web/20180707152654/http://www.getvermeer.com/

Exhibit 4, Internet Archive Entry of Defendant's Stylized "V" Logo (v2) on getvermeer.com on 26 October 2021 (last accessed 25 September 2025), *available at* https://web.archive.org/web/20211026031933/https://www.getvermeer.com/

Exhibit 5, Plaintiff's U.S. Trademark Registration No. 2,593,606 (filed 5 April 2000; registered 16 July 2002)

Exhibit 6, Plaintiff's U.S. Trademark Registration No. 3,346,180 (filed 15 June 2006; registered 27 November 2007)

Exhibit 7, Plaintiff's U.S. Registration No. 7,484,356 (filed 25 March 2022; registered 27 August 2024)

Exhibit 8, Plaintiff's U.S. Registration No. 7,295,357 (filed 25 March 2022; registered 30 January 2024)

Exhibit 9, Plaintiff's U.S. Registration No. 1,771,115 (filed 28 September 1992; registered 18 May 1993)

Exhibit 10, Plaintiff's U.S. Registration No. 4,752,754 (filed 16 January 2014; registered 9 June 2015)

Exhibit 11, Plaintiff's U.S. Application Serial No. 97/757,537 (filed 17 January 2023)

Exhibit 12, Office Action Rejecting Plaintiff's U.S. Application Serial No. 97/757,537 (issued 12 August 2025)

Exhibit 13, Plaintiff's Petition for Cancellation, No. 92080355 (16 August 2022)

Exhibit 14, Vermeer Projects Suite Product Page (Screenshot), *available at* https://store.vermeer.com/navigation-items/products/vermeer-projects (last accessed 25 September 2025)

Exhibit 15, VermeerOne Platform Product Page (Screenshot), *available at* https://www.vermeer.com/na/digital-tools/vermeerone-platform (last accessed 25 September 2025)

29

Exhibit 16, Vermeer's DigiTrak Product Page (Screenshot), *available at* https://www.vermeerallroads.com/complementary-equipment/digital-control/ (last accessed 25 September 2025)

Exhibit 17, Internet Archive Entry for Press Release with Stylized "V" Logo (v2) and Product Description from 7 December 2021, *available at* https://web.archive.org/web/20211207151102/https://www.getvermeer.com/news/vermeer-two-sbir-phaseii-airforce (last accessed 25 September 2025)