IN THE UNITED STATES DISTRICT COURT
THE EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION

─────────────────────────────X

**VERMEER MANUFACTURING COMPANY**

    *Plaintiff,*

    *v.*                                **Case No: 1:25-cv-00239-LDH-CHK**

**AEROCINE VENTURES INC.**

    *Defendant.*

─────────────────────────────X

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT**

The central question is straightforward: Has Vermeer alleged facts that plausibly suggest consumers would confuse augmented reality drone navigation software with software for underground construction and machinery management? Based solely on Vermeer's own allegations, the answer is no.

Even accepting every factual allegation in the Amended Complaint ("Complaint") as true and drawing all reasonable inferences in Vermeer's favor, the inescapable conclusion remains: software for augmented reality drone navigation and software for underground construction and management of heavy machinery are so dissimilar that consumer confusion is implausible as a matter of law. The Complaint contains no facts suggesting the parties' software serves similar purposes, uses similar technology, targets similar customers, or sells through similar channels.

This Reply addresses four important points. First, the Complaint incorporates the essential documents AeroCine cited. Second, at minimum, three of Vermeer's Asserted Marks

1

cannot support claims for relief. Third, Vermeer's factual allegations contradict its legal conclusions of "legally identical goods." Fourth, even accepting every allegation as true, no *Polaroid*[1] factor supports confusion.

## ARGUMENT

**I.   THE COMPLAINT EXPRESSLY INCORPORATES THE ESSENTIAL DOCUMENTS THAT AEROCINE CITED, AND THE COMPLAINT'S OWN ALLEGATIONS ARE DISPOSITIVE.**

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts may consider materials beyond the pleadings, including exhibits attached to the pleading, documents incorporated by reference, documents integral to the pleading, and matters subject to judicial notice. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint."); *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005) (courts may take judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").

Vermeer's claim that AeroCine's Motion "entirely relies on facts outside of the Complaint" is hyperbolic and false. (Pl.'s Resp., 4, 9.). Virtually all of AeroCine's arguments cite directly to the Complaint,[2] to documents expressly referenced therein, or to documents subject to judicial notice. Vermeer itself attached its six Asserted Marks as Exhibit A, attached AeroCine's '317 Registration as Exhibit B, incorporated its unasserted '537 Application by referencing it in

---

[1] *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961).

[2] While AeroCine referenced three product pages from Vermeer's website, the USPTO documents for Vermeer's marks incorporated by the Complaint contain product information in the specimens of use, rendering the website product pages unnecessary. (ECF No. 17, ¶¶ 14-17.). Similarly, the Complaint references AeroCine's '317 Registration that shows AeroCine was using its stylized "V" logo in 2018. (*Id*. at ¶ 47; Ex. 2, Def.'s '317 Reg.).

2

paragraph 27, and cited its TTAB Petition for Cancellation at paragraphs 52-53. (ECF No. 17, ¶¶ 14-17, 27, 32, 52-53, 62, 77, 79, 89, 91, Exs. A-B.).

More fundamentally, even setting aside AeroCine's documentary evidence, the Complaint's own allegations are dispositive. The Complaint describes Vermeer as selling industrial and agricultural equipment for "most of a century," with software "for use in connection with industrial vehicles to increase job efficiency, such as installation planning software that allows online tracking of machine productivity and remote jobsite management" and "simulation software to allow industry professionals to practice their skills or train new employees" as well as software-as-a-service for remotely accessing and monitoring the location, productivity, and maintenance of agricultural equipment and vehicles. (ECF No. 17, ¶¶ 5, 25-26.). The Complaint alleges that AeroCine markets "augmented reality drone navigation" software to governments, militaries, and aerospace companies. (*Id*. at ¶ 36 (alleging AeroCine markets its products at "the AFA Air, Space & Cyber Conference" and "the Army Aviation Mission Solutions Summit.")). The Complaint alleges no factual connection between these business models.

These allegations—from Vermeer's own Complaint—establish product dissimilarity as a matter of pleading, not proof. AeroCine's Motion asks the Court to do precisely what Fed. R. Civ. P. 12(b)(6) requires: accept Vermeer's factual allegations while rejecting contradictory legal conclusions that those facts cannot support.

3

## II. THREE ASSERTED MARKS CANNOT SUPPORT CLAIMS FOR RELIEF.

### A. Vermeer's '115 and '754 Registrations Cover Only Machinery, Not Software.

Vermeer's '115 and '754 Registrations cover only Class 007 machinery; these registrations do not cover any software whatsoever. (Ex. 9, Pl.'s '115 Reg.; Ex. 10, Pl.'s '754 Reg.). The Complaint does not allege that AeroCine offers heavy machinery. Software and heavy machinery are not similar products under any definition. This cannot be the law. Trademark protection exists to prevent consumer confusion in competitive markets—not to grant universal rights across all industries simply because a mark is registered for one product category. All claims based on the '115 and '754 Registrations must be dismissed for failure to state a claim. *See Pirone v. MacMillan, Inc.*, 894 F.2d 579, 584 (2d Cir. 1990) (claims "may be dismissed as a matter of law where the court is satisfied that the products or marks are so dissimilar that no question of fact is presented"); *Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 116 (2d Cir. 1984); *see infra* note 4 and accompanying text.

### B. Vermeer's '356 Registration is Junior to AeroCine's '317 Registration.

A cause of action for infringement of a registered trademark may be brought under 15 U.S.C. § 1114. Vermeer's '356 Registration issued in 2023. AeroCine's '317 Registration issued in 2019. When both parties have federal registrations for the same mark and the defendant's registration issued first, the plaintiff's later-issued registration cannot support a § 1114 infringement claim against the earlier registration. Count I claims based on the '356 Registration should therefore be dismissed.

At minimum, the Complaint fails to allege plausible facts upon which the Court may grant relief for Vermeer's '115, '754, and '356 Registrations.[3]

### III. VERMEER'S FACTUAL ALLEGATIONS CONTRADICT ITS LEGAL CONCLUSIONS OF "LEGALLY IDENTICAL GOODS."

Vermeer argues that it need only allege "legally identical goods" to survive dismissal. (Pl.'s Resp., 8, 10.). But Vermeer cannot plead detailed facts establishing dissimilarity, then escape Fed. R. Civ. P. 12(b)(6) by appending contradictory legal conclusions of identical products. (*Id*. at 10.). *Ashcroft v. Iqbal* prohibits precisely this maneuver. 556 U.S. 662, 678 (2009). Under *Iqbal*, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. When factual allegations contradict legal conclusions, courts must reject the legal conclusions. *See id*.

Here, the Complaint's factual allegations affirmatively establish product dissimilarity: Vermeer sells heavy machinery and software for underground construction and managing heavy machinery, while AeroCine offers augmented reality drone navigation software to military and aerospace customers. The Complaint alleges no factual connection between these business models—no similar products, purposes, trade channels, markets, or customers. Yet Vermeer's legal conclusions assert "legally identical goods." (Pl.'s Resp., 10.). The Court must accept the factual allegations and reject the contradictory legal conclusions.

---

[3] Dismissal of registration-based claims (Counts I-II based on 15 U.S.C § 1114) does not resolve common-law claims (§ 1125(a) and state law, Counts III-VII). When registration claims fail due to priority or scope issues, common-law claims may survive—but only if plaintiff establishes both common-law rights in the relevant category and likelihood of confusion. Here, even if Vermeer claims it has common-law rights for some goods, those claims fail for the same reason: product dissimilarity. *See infra* §§ III-IV.

5

Vermeer attempts to bridge this wide gap by arguing the parties sell "legally identical goods" because "both companies sell software that simulate activity, provide remote performance, and utilize location identification systems." (*Id*. at 9.). This definition is meaningless because it applies to virtually all software. All software "simulates activity" (computation), provides "remote performance" (networked systems), and utilizes "location identification" (GPS, authentication, device identifiers). Under Vermeer's logic, Uber and World of Warcraft would be "legally identical goods." This cannot be the law.

AeroCine's augmented reality drone navigation software serves an entirely different function than Vermeer's underground construction and machine management applications—even if both involve generic computing capabilities all modern software shares.

## IV. NO *POLAROID* FACTOR SUPPORTS CONFUSION.

### A. Substantial Product Dissimilarity Cannot Be Overcome by Mark Identity.

Vermeer argues that alleging both parties use an "identical name" plus "legally identical goods" suffices for plausibility. (Pl.'s Resp., 8-10.). But even with both parties using the term VERMEER, the competitive proximity between goods must be analyzed in light of the actual products and markets involved—and here, the Complaint's own allegations establish the parties' products are not "legally identical" or even remotely similar.

Even in *Mobil Oil Corp. v. Pegasus Petroleum Corp.*—the case Vermeer cites for the proposition that mark strength demands broad protection—the court found infringement because both parties sold petroleum products to similar customers through similar channels. 818 F.2d 254, 257-58 (2d Cir. 1987) (noting both parties "use their marks in the petroleum industry."). No such similarity exists here. As detailed in Sections I and III above, the Complaint alleges

6

underground construction and machinery management software versus software for augmented reality drone navigation, sold through entirely different channels to entirely different customers. *See supra* §§ I, III.

Courts routinely find no infringement despite similar marks when products are dissimilar.[4] Product dissimilarity is not merely one factor among many—it is often dispositive. *See supra* note 4. As the Second Circuit has recognized, "courts retain an important authority to monitor the outer limits of substantial similarity." *Universal*, 746 F.2d at 116 (quoting another source).

### B. *MidCap* is Distinguishable.

Vermeer relies on the court's vacatur of its own dismissal order in *MidCap Bus. Credit, LLC v. MidCap Fin. Tr.*, No. 21 CIV. 7922 (AKH), 2023 WL 12141718 (S.D.N.Y. May 23, 2023). (Pl.'s Resp., 9-10.). But *MidCap* involved a complaint that plausibly alleged competitive proximity through factual allegations about similar services and markets. *Id*. at 1. The *MidCap* court vacated its dismissal because it had improperly "expressed a view of the merits" by making

---

[4] *JTH Tax LLC v. AMC Networks Inc.*, 694 F. Supp. 3d 315, 337-40 (S.D.N.Y. 2023) (dismissing claims where tax preparation services and television programming were dissimilar despite similar marks); *Strange Music, Inc. v. Strange Music, Inc.*, 326 F. Supp. 2d 481, 491 (S.D.N.Y. 2004) (granting summary judgment where musical artist and film production company used identical marks for dissimilar services); *Computer Assocs. Int'l Inc. v. AJC Computerized Data Mgmt., Inc.*, 889 F. Supp. 630, 637 (E.D.N.Y. 1995) (finding no infringement after trial despite both parties offering software, where the specific software products served different markets and functions); *Murray v. Cable Nat. Broad. Co.*, 86 F.3d 858, 861 (9th Cir. 1996), as amended (Aug. 6, 1996) (affirming dismissal and stating that "[i]f goods or services are totally unrelated, there is no infringement because confusion is unlikely."); *Eastland Music Grp., LLC v. Lionsgate Ent., Inc.*, 707 F.3d 869, 872 (7th Cir. 2013) (affirming dismissal where "Eastland Music's complaint does not (and could not plausibly) allege that consumers treat it as the producer or source of the film 50/50, or treat Lionsgate as the producer of the 2003 rap album."); *Fortres Grand Corp. v. Warner Bros. Entertainment Inc.*, 763 F.3d 696, 705, (7th Cir. 2014) ("[Plaintiff] Fortres Grand has not and could not plausibly allege that consumers are confused into thinking Fortres Grand is selling such a diabolical hacking tool licensed by [defendant] Warner Bros."); McCarthy on Trademarks & Unfair Competition § 32:121.25 ("A dismissal on the pleadings because a likelihood of confusion is impossible from the face of the complaint is highly unusual, but not unheard of."); *Toho Company, Limited v. Sears, Roebuck & Company*, 645 F.2d 788, 790-91 (9th Cir. 1981) (holding that dismissal was appropriate where the goods are unrelated as a matter of law).

7

factual findings about consumer perceptions and market dynamics without the benefit of discovery. *Id*. at 1.

Here, the Complaint's factual allegations affirmatively establish substantial competitive distance—different products, functions, customers, marketing, and commercial channels. The Court need only read Vermeer's allegations.

The critical distinction is this: *MidCap* involved a complaint that plausibly alleged competitive proximity through facts. *Id*. The court erred by demanding proof at the pleading stage. *Id*. Here, the Complaint alleges facts establishing competitive distance. Vermeer then contradicted those facts with conclusions of "legally identical goods." The Court need not make findings—it need only read Vermeer's own allegations and reject the contradictory conclusions.[5]

### C. Even Accepting All Allegations as True, No *Polaroid* Factor Supports Confusion.

*Similarity of products*: The Complaint alleges no technological, functional, or purposive similarity aside from broad claims of identical goods. (ECF No. 17, ¶¶ 25-26, 58, 60.).

*Commercial channels*: The Complaint alleges AeroCine markets to military and aerospace customers at trade shows; Vermeer does not allege it attends these or targets such customers. (*Id*. at ¶ 36.).

*Bridging the gap*: Vermeer argues its lunar excavator demonstrates intent to bridge the gap. (*Id*. at ¶ 29.). But the lunar excavator is exactly what Vermeer describes: a physical digging machine. (*Id*.). That this excavator operates on the moon rather than Earth represents geographic

---

[5] When AeroCine reviewed *MidCap* in August 2025, Westlaw displayed no red flags or negative treatment warnings. (*See* Ex. 19, Screenshot Comparing Westlaw Presentation of *MidCap* on 15 August 2025 and 31 October 2025). The current Westlaw entry shows multiple red flags and "Negative Treatment (2)" including a "Vacated on Rehearing" warning that were not displayed when AeroCine drafted its Motion. (*Id*.; *see also* Ex. 18, McKay Decl.).

8

expansion of Vermeer's core excavation equipment business, not technological expansion into augmented reality navigation software for drones. (*Id*.).

*Actual confusion*: Vermeer alleges one misdirected letter from the Air & Space Forces Association regarding unpaid booth fees over three years, but this letter concerned billing, not purchasing decisions—no consumer confused the parties when deciding which product to buy. (*Id*. at ¶¶ 39-41.).

*Sophistication*: Military/aerospace agencies procuring specialized augmented reality drone navigation systems and farmers/construction companies making capital machinery investments evaluate technical specifications and conduct due diligence.

**D. No Combination Could Support Confusion.**

Applying the *Polaroid* factors to the Complaint's allegations holistically shows overwhelming product dissimilarity (augmented reality drone navigation software vs. software for underground construction and machine management), different trade channels (aerospace conferences vs. agricultural dealers), different customers (military/aerospace vs. farmers, miners, and construction contractors), no credible bridging (physical excavator not navigation software), no meaningful confusion (one administrative error from a non-consumer), no bad faith, and sophisticated purchasers who conduct extensive due diligence before making substantial purchases. (ECF No. 17, ¶¶ 2-3, 5-6, 18, 20, 24-43, 46-48, 55-66, 70, 72.).

No combination of factors could overcome the fundamental dissimilarity the Complaint itself alleges. (*See id*.). Mark identity alone cannot support infringement when the parties operate in different industries, serve different customers through different channels, and offer

fundamentally different products. (*Id.*). To hold otherwise would eviscerate trademark law's balance between protecting marks and allowing competition.

## CONCLUSION

Vermeer asks this Court to accept contradictions: that its allegations describe dissimilar products, yet the law should treat them as identical; that software for augmented reality drone navigation and software for underground construction and machine management are "legally identical goods." A plaintiff cannot plead facts establishing dissimilarity, then escape dismissal by asserting contradictory legal conclusions. *Iqbal* prohibits this.

At minimum, claims based on the '115, '754, and '356 Registrations must be dismissed. The '115 and '754 Registrations cover only machinery, not software. The '356 Registration issued in 2023, more than three years after AeroCine's '317 Registration issued in December 2019. Under 15 U.S.C § 1114, Vermeer cannot maintain federal registration-based infringement claims using a later-issued registration against AeroCine's earlier-issued registration. Count I and II claims based on the '115, '754, and '356 Registrations should be dismissed, leaving at most Count I and II claims based on the '606, '180, and '357 Registrations, plus common-law claims under Counts III-VII.

More fundamentally, the Complaint alleges underground construction and machine management software versus augmented reality for drone navigation software; agricultural/construction channels versus military/aerospace channels; farmers and contractors versus defense agencies and aerospace companies; and no commercial overlap. Because confusion is implausible as a matter of pleading, the Complaint should be dismissed with prejudice.

10

**Dated**: 12 November 2025

Respectfully submitted,

By: /s/ Margaret Farid
Margaret Farid, Esq.
NYS Bar No.: 5611777
Roy Farid LLP
206 Jericho Turnpike, Fl. 2
Floral Park, New York 11001
(718) 971-1909
mfarid@royfarid.com

-and-

By: /s/Casey Scott McKay/
Casey Scott McKay
TN Bar No.: 034028
MC Law, PLLC
1441 U St. NW, Suite 102
Washington, DC, D.C. 20009
202.409.1003
casey@mclaw.io

*Attorneys for Defendant AeroCine Ventures Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed using this Court's CM/ECF notification service, which sent notification of such filing to all pro se parties and counsel of record on 12 November 2025.

Melanie E. King
Armstrong Teasdale LLP
7700 Forsyth Boulevard
Suite 1800
St. Louis, MO 63105
(314) 621-5070
meking@atllp.com

Richard L. Brophy
Armstrong Teasdale LLP
7700 Forsyth Boulevard
Suite 1800
St. Louis, MO 63105
(314) 621-5070
rbrophy@atllp.com

Andrew T. Lolli
Armstrong Teasdale LLP
7 Times Square, 44th Floor
New York, NY 10036
(212) 209-4400
alolli@atllp.com

Zachary C Howenstine
Armstrong Teasdale
7700 Forsyth Blvd.
Suite 1800
St. Louis, MO 63105
314-621-5070
zhowenstine@atllp.com

*Attorneys for Plaintiff Vermeer Manufacturing Company*

By: /s/ Margaret Farid
Margaret Farid, Esq.
NYS Bar No.: 5611777
Roy Farid LLP

206 Jericho Turnpike, Fl. 2
Floral Park, New York 11001
(718) 971-1909
mfarid@royfarid.com

-and-

By: /s/Casey Scott McKay/
Casey Scott McKay
TN Bar No.: 034028
MC Law, PLLC
1441 U St. NW, Suite 102
Washington, DC, D.C. 20009
202.409.1003
casey@mclaw.io

*Attorneys for Defendant AeroCine Ventures Inc.*